## MARGARET SNODGRASS et al. *v.* JAMES ANDREWS et al.

1. CHANCERY COURT: JURISDICTION.—The Chancery Court is the proper tribunal in which the creditors of a deceased person shall seek relief against fraudulent conveyances of property, made by the decedent in his lifetime.

2. PROBATE COURT: JURISDICTION.—The Probate Court has no power to compel an administrator to return property in his inventory, adversely claimed by third person: it cannot, therefore, order the administrator to return, as a part of his inventory, property fraudulently conveyed by the intestate in his lifetime, for the purpose of defrauding his creditors.

3. FRAUDULENT CONVEYANCE: BY WHOM IMPEACHABLE.—A fraudulent conveyance of property, to defeat creditors, although void as to them, is good as between the parties and their representatives; hence, a suit cannot be maintained by the administrator, to set aside such conveyances made by his intestate, and to recover the property, and subject it to the payment of his debts. See *Ellis* v. *McBride*, 27 Miss. 155.

4. EXECUTOR: INSOLVENT ESTATES, WHEN SUABLE.—The statute prohibiting suits against the administrator of an insolvent estate, does not apply to a suit by the creditors of the intestate, instituted for the purpose of subjecting to the payment of their debts, property fraudulently conveyed by him in his lifetime.

5. EQUITY: MULTIFARIOUSNESS.—A bill by the creditors of a deceased person, to set aside several distinct fraudulent conveyances of real and personal estate, made by him in his lifetime, and to subject property held in secret·trust for his benefit by third persons, to the payment of his debts, may be properly maintained against the administrators and heirs of the intestate, and all the persons charged to be implicated in any of the fraudulent transactions. See *Butler* v. *Spann*, 27 Miss. 234.

6. EQUITY: WHEN EXECUTION AT LAW WILL BE AIDED.—Whilst, as a general rule, a creditor will not be permitted to seek the aid of a court of equity to assist his execution at law, until he shows that he has proceeded at law to the extent of establishing a lien on the property against which relief is sought; yet, where the transaction has assumed such a form, or the property has been placed in so peculiar a position, or is of such a nature, that it *cannot* be subjected to an execution at law, it will be sufficient if the creditor has established his debt by judgment at law, in such mode as to show that it is a fixed and ascertained liability, and entitled to satisfaction out of the property of the debtor liable to its payment, under the laws of the land. This is the rule applicable to cases where relief is sought on account of the fraudulent conveyance of his property by the debtor. See *O'Brien* v. *Coulter*, 2 Blackf. 423 ; *McDermott* v. *Strong*, 4 Johns. Ch. R. 687 ; *Russell* v. *Clark*, 7 Cranch, 89 ; *Brinkerhoff* v. *Brown*, 4 John. Ch. R. 676 ; *Bottsford* v. *Burr*, 11 Cow. 369 ; *Weed* v. *Pearce*, 9 Ib. 722.

7. SAME.—Hence, a creditor, who has obtained a judgment at law against the administrator, and thereby fixed a liability against the intestate, may, upon return of "*nulla bona*" to his execution, proceed in equity against the heirs, to set aside a fraudulent conveyance made by the ancestor, of his real estate.

8. EQUITY: SUIT TO SUBJECT REAL AND PERSONAL ESTATE FRAUDULENTLY CONVEYED.—The creditor of a deceased person, who has fraudulently conveyed or encumbered both his real and personal estate, may proceed in equity on the same suit to subject both the real and personal estate to the payment of his debt, and is not obliged to exhaust the personalty before he commences proceeding against the realty.

9. STATUTE OF LIMITATIONS : ADVERSE POSSESSION.—A party, in order to avail himself of the benefit of the Statute of Limitations as to personal property, must show an adverse possession of it for the time limited by law ; and to constitute adverse possession, it is indispensable that there should be a claim of title.

10. SAME : FRAUDULENT CONVEYANCE.—Where the property of an intestate was colorably sold to one of his sons, in order to defeat creditors, and the property remained in possession of the widow, (she being administratrix,) as the head of the family, among whom was the son, such possession will not be considered adverse, so as to create the bar of the Statute of Limitations against the suit of creditors of the intestate, for the purpose of subjecting the property to the payment of their debts.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, judge.

On the 11th day of June, 1853, the appellees, William J. Briscoe, James Andrews, and William S. Scott, filed their bill in the Superior Court of Chancery against the appellants, by which they sought to subject to the payment of their debt due by one John Snodgrass, deceased, a large amount of property, which they alleged had been fraudulently conveyed by said John Snodgrass, and held in secret trust for his benefit, by others.

The facts charged as material, are :—

1. That the complainants are the assignees, for a valuable consideration, and the equitable owners of a judgment, rendered at the February term, A. D. 1852, of the Circuit Court of Warren county, against the defendant, Margaret Snodgrass, administratrix of said John Snodgrass, and B. F. Jones, administrator of George Leighton, and William Briscoe, for $27,165. That said judgment was founded on a debt of said John Snodgrass, due in

1839, and that execution had been issued thereon, and returned "*nulla bona,*" and that it now remained unsatisfied.

2. That in 1840, said John Snodgrass made a colorable and fraudulent sale of a plantation and slaves, to one James Snodgrass, his brother, for the purpose, and with the intent and design to hinder, delay, and defraud his creditors; and that afterwards he retained the use, possession, and control of the same, receiving the rents, issues, and profits, in the same manner, and to the same extent as he did before. That in 1849, after the death of said John Snodgrass, the said James Snodgrass, for the purpose of carrying out the original fraudulent design and combination between himself and said John Snodgrass, sold said plantation and slaves at public sale; and that one John Snodgrass, jr., the son of John Snodgrass, deceased, purchased a portion of the same; that this purchase was merely colorable, and that no money was paid therefor; and it was for the benefit of the family of said John Snodgrass, Sr. That it is pretended that the sale was made to pay debts assumed by said James Snodgrass for said John Snodgrass, sr.; and if this defence is relied on, they pray a discovery as to the debts, to whom due, and as to what other assets have been received by said James for the same purpose. That the property so purchased by said John Snodgrass, at the said sale, went, or rather remained, in possession of Margaret Snodgrass, the administratrix and widow of John Snodgrass, Sr., as the head of the family, and has so remained up to this time.

3. That in 1840, one Llewellyn Price, the father of said Margaret, conveyed in trust to one Bolls, for the benefit of said Margaret and her children, a valuable tract of land; that this was falsely pretended, and so recited in the deed, to be made for the love and affection which the said Price had for his said daughter; but the truth is, that said land was bought and paid for by said John Snodgrass, Sr., and was so conveyed by his direction, for the purpose of defrauding his creditors.

4. That in 1843, said John Snodgrass, Sr., purchased, for $10,000, certain valuable real estate in Yazoo City and adjoining thereto, and took the conveyance in the name of one Richard Edwards, who, during his lifetime, held the same in secret trust

Snodgrass et al. *v.* Andrews et al.

for the benefit of said John Snodgrass, Sr.; and that since his, said Edwards' death, the legal title thereto is in his children and heirs at law, clothed with the same trust; and that this was also done to defeat and defraud the creditors of said John Snodgrass, Sr. That the said Richard Edwards, in his lifetime, also held other valuable property, consisting of plantations and slaves in Holmes, Yazoo, and Newton counties, in trust for the said John Snodgrass, sr., the legal title being vested in said Edwards, for the purpose of defrauding the creditors of said John Snodgrass, Sr.

5. That said Edwards also held in the county of Warren, a plantation and slaves, which belonged to him and the said John Snodgrass, Sr., in partnership; and that the interest of the said John Snodgrass, Sr., therein was kept secret, for the purpose of defrauding his creditors.

6. That in 1840, eleven negroes belonging to said John Snodgrass, Sr., were sold at sheriff's sale, and purchased by one William Young, with the money, and for the benefit of the said John Snodgrass, Sr.; and the said John Snodgrass, Sr., has remained in possession of said slaves ever since, till his death.

The bill also shows the death of the said John Snodgrass, sr., and of the said James, and of the said Richard Edwards, and makes their heirs and administrators parties; also William Young and B. F. Jones, administrators of George Leighton and William Briscoe. The bill also charges that the said Margaret Snodgrass, administratrix of the said John Snodgrass, sr., hath taken no steps, and will take none, to recover or apply any of the assets aforesaid to the payment of the debts of the said John Snodgrass, sr., nor to recover and hold the same, so that they may be so applied; and she has failed to return any of the said property in her inventory; but that she is in combination with others, for the purpose of carrying out the fraudulent design and intention of said John Snodgrass, Sr. The bill prays for a receiver, and a discovery from the defendants; that this fraudulent conveyance be set aside and annulled; and for a sale of the property; for a dissolution of the partnership with Edwards, and for a settlement of the partnership accounts; and for general relief.

William Young demurred, for want of equity on the face of the bill, as to him.

The heirs of John Snodgrass, sr., demurred, and for cause assigned :—

1. The complainants are creditors at large, as to the land.

2. The defendants are protected by the Statute of Limitations, as to the personal property.

3. The Probate Court is the only court having jurisdiction.

4. The bill is multifarious, in seeking to dissolve and settle the partnership of Edwards and Snodgrass, and in seeking to reach property held by so many titles.

5. The heirs of James Snodgrass are not proper parties.

Margaret Snodgrass, and the heirs of Edwards, demurred generally.

The chancellor overruled the demurrer, and the defendants appealed.

*W. C.* and *A. K. Smedes,* and *John B. Coleman,* for appellants.

The complainants, alleging themselves to be the owners, by assignment, since its rendition, of a judgment against Margaret Snodgrass, administratrix of John Snodgrass, deceased, founded on a note executed by the latter in his lifetime, have filed their bill against her and the heirs of John Snodgrass, deceased, and various other parties, to set aside various alleged fraudulent sales of John Snodgrass in his lifetime, to different parties, as specifically stated in the bill, of real and personal estate ; with the prayer that the same may be sold by order of the court, to pay to complainants their judgment.

This being the scope of complainants' bill, it is demurred to, for several causes.

1. The want of jurisdiction in the court. The estate of John Snodgrass is in the course of administration in the Probate Court. It is either solvent or insolvent; if the latter, as would seem to be the case from the allegations of the bill, there being neither real nor personal estate out of which the debt of complainant can be made, then the bill must inevitably be *dismissed,* because the statute provides that no action or suit shall be commenced or main-

Snodgrass et al. *v.* Andrews et al.

tained against an administrator, after his estate is represented insolvent. Hutch. Code, 668.

If solvent, then the creditor has his remedy at law, to sell under execution, the *personal* estate of the intestate that may be in the hands of the administrator to be administered. But if there be none, as is alleged here, in his hands for that end, what then is the creditor's remedy? Is it, as by this bill is attempted, to take the jurisdiction out of the Probate Court, of the administrator, and transfer it to a court of equity? Or, is it by proper proceedings in the Probate Court, to have the inventory of the administrator corrected, and the property which really belongs to the intestate so declared, and subjected in due course of law, to the payment of debts? We insist that the latter is, under our system of laws, the proper practice and right mode. It will be observed, that we do *not deny, that were this bill filed against John Snodgrass himself, were he alive, it would be a proper case for equitable interposition. · Nor do we deny that the complainants are entitled on the allegations in their bill to some relief; but the simple question we present is, whether this court, or the Probate Court, is the proper one to grant it?* If the latter court has *the power* to give the relief asked for, its jurisdiction is exclusive of this court. Has it, then, the power to grant the relief to which the complainants are entitled? Bearing the fact in mind, that this estate is in course of administration in the Probate Court, the whole question presented by the bill is, what power has the Probate Court over its administrator, to force him to alter or modify the schedule of inventoried property, or to add to or deduct from that list? If it have full power in the premises, then it can give all the relief to which the complainants are entitled, for it will not be pretended that the Chancery Court, after decreeing these alleged fraudulent deeds to be void, would have the further power to close the administration of the estate, by ordering their sale to pay this creditor, without making the other creditors parties, and without regard to the solvency or insolvency of the estate. This would be to take the entire administration out of the Probate Court. It is obvious, then, that the extent of the relief this court would give, would be to avoid the deeds and reform the inventory of the administrator.

And is not that within the power of the Probate Court? The case of *Killcrease* v. *Killcrease*, 7 How. 316, is a decision directly to the effect that such a power exists in the Probate Court. That case was a proceeding by the distributees of an estate to compel the administratrix to inventory certain slaves; and the court sustained the proceeding, saying, that if it had not such a power, " its jurisdiction in regard to estates of decedents, which was intended by the constitution to be full and ample, and *almost exclusive*, will be far too confined to answer its ends and object."

In *Carmichael* v. *Browder*, 3 How. 258, one of the earliest cases in which the conflicting jurisdictions of the two courts was discussed, the High Court say : " there are but few if any cases of administration, in which the powers of the Probate Court are not altogether adequate to the necessary relief. Indeed, its powers may be said to be co-extensive with those of a court of equity; for if necessary, parties may proceed by bill and answer, and the court may decree as the justice of the case may require."

It will not do to say that the court will not exercise these powers at the instance of *a creditor* of the intestate. It will do so if he be, as in this, a judgment creditor, or have a legally authenticated claim. See *Freeman* v. *Rhodes*, 3 S. & M. 338, 339.

If, then, the Probate Court has power *to force* the administrator to make a full inventory of the property of the estate, it has power to do all that is requisite to effectuate that end ; and may set aside deeds of the intestate upon proper showing, and administer the whole estate. If this be so, it disposes of the whole bill.

2. The bill is multifarious. It seeks to implead the heirs of John Snodgrass, with his administrator, and in the same bill to reach both the personalty and the realty of the intestate ; it seeks also to implead the heirs and administrator of Richard Edwards deceased, and adjust the partnership of Edwards and of Snodgrass. It seeks also a discovery and account from the heirs of James Snodgrass.

3. The administrators of Leighton, and William Briscoe are not proper parties to the bill: it seeks no relief, and prays no discovery as to them, and they have no interest in the controversy.

4. As to the real estate, the bill is unquestionably bad. As to

that, the complainants are mere creditors at large. The judgment against the administratrix is not evidence against the heirs. There is no privity between the heir and the administrator. In a proceeding against the heir to reach the realty, the judgment against the administrator is *no evidence.*

No rule is better settled than that a creditor cannot come into equity to reach equitable assets, or to set aside a fraudulent conveyance, without a *lien.* Here the creditor plainly has no *lien.* The decisions are express, that to attack a fraudulent sale, the creditor must have a *lien* by judgment or otherwise. *Hilzhiem* v. *Drane,* 10 S. & M. 556. This court can give no other relief to complainant than he could have *were the fraudulent deeds as to the realty set aside.* If John Snodgrass had died possessed of the lands, the creditor with his judgment against the administrator, could not have sold *an acre* of them. No one but the administrator, and that under the direction of the Probate Court, can sell the lands of a deceased. That court has power to order the sale to pay debts, and will do it on a proper showing; and in the case of a fraudulent deed, it has power to set aside on a proper case, and give all the relief needed. It cannot administer the land otherwise. On the death of the ancestor, the heir takes the realty and is entitled to the rents and profits, until it is requisite to sell it for debts. The complainants therefore, whatever may be their remedy as to the personalty, must fail as to the land.

5. As to the personalty, complainants are barred by the Statute of Limitations of *three* years. It is alleged in the bill, that in 1849, the defendants purchased the property in controversy at a public sale, and have been in possession ever since, claiming it as theirs. This, according to the decision of the Supreme Court of the United States in *Shelby* v. *Gray,* 11 Wheat. 361, vests such a title in the party having possession, as would enable him to maintain an action for the slave in another state even, and against the former owner himself:—mere possession for the prescribed time, with assertion of ownership, giving title.

*T. J.* and *F. A. R. Wharton,* for appellees.

So far as respects the first point relied on by plaintiff in error, in

support of the demurrer to the bill, there surely can be no doubt or difficulty.    It is insisted that the Probate Court has full and exclusive jurisdiction of the subject.

It is said that the estate of John Snodgrass is in course of administration in the Probate Court, and is either solvent or insolvent.    If *insolvent*, that the bill should be dismissed under the statute, in relation to suits brought against an administrator after estate is declared insolvent.    Hutch. Code, 668.

We respectfully suggest that counsel have both mistaken the construction and the application of the statute to a bill like the present.

It is further said, in support of the objection to the jurisdiction of a court of equity on the subject-matter of the bill, that if the estate is *solvent*, the creditor has his remedy at law, to sell under execution the personal estate of the intestate that may be in the hands of the administrator to be administered.    That position is not questioned.    But how can that principle apply to this case? One of the main grounds in support of the bill is the charge, that a large amount of property, personal and real, *equitably* belonging to said estate, is placed beyond the reach of creditors, by fraudulent conveyances, which have invested others with the naked *legal* title : that the administratrix and one of the heirs, have combined with third persons to defraud the creditors.    The very ground work and *gravamen* of our bill is, that the *personal* property, instead of being in the hands of the administratrix, to be administered and used in paying debts, is held by her and others fraudulently, under a secret fraudulent trust for the benefit of herself individually, and of the family of the intestate.

2. Even if she, the administratrix, were not a party to these frauds, still the naked legal title being held by others who are parties to the frauds, makes it necessary for creditors to come into a court of equity, to have a cancellation of those fraudulent conveyances, and procure the removal of the clouds thrown over the title, which would impair the value of the property, and the security for the payment of their claims ; so that whether the administratrix be a party or not to the alleged frauds and fraudulent conveyances, the Probate Court has not jurisdiction of the

matters of this bill. It cannot compel an administratrix to charge herself in her inventory with property, the legal title to which was not in her intestate at his death. It has no power to try the question of title, either between the administratrix and third persons holding the property by fraudulent conveyances, or upon the application of creditors to compel her to inventory the same as the property of the estate. Upon what principle can it be pretended that said court could, upon such application, compel her to charge herself with such property, except upon the principle that that court may inquire into, and determine upon the question of title between said intestate and the persons so holding the same?

How much stronger does this objection become, when considered in the light of the charges of this bill:—that the administratrix herself is a party to these alleged frauds; that the third persons in possession of the property under these fraudulent conveyances and secret trusts, are really holding for her benefit, and the benefit of the heirs at law of her intestate. Will it be pretended that the Probate Court could entertain jurisdiction of proceedings at the suit, either of the administratrix and heirs, or of creditors, to vacate said conveyances and subject said property as assets for distribution amongst heirs, or for payment of claims of creditors? It is equally clear that no court of law is competent to grant the relief prayed, for the reason that these questions of fraudulent conveyances, fraudulent combinations, secret trusts, and matters of account, belong peculiarly to courts of equity.

Counsel for appellants say they do not deny, that if John Snodgrass were alive, and this bill were filed against him, it would be a proper case for equitable interposition; nor do they deny that complainants are entitled *to some relief;* and that the only question they present is, whether a court of equity, or of probate, is the proper one to grant. I respectfully submit that this is a fatal concession. So confident am I that it is, and that your Honors will so consider it, that I fearlessly risk the fate of the case upon the point. Here, then, is an issue which involves the whole controversy, and one of very easy solution, to wit: has the Probate Court jurisdiction to grant the relief prayed—*not a part of it*— but the whole relief prayed? and is such jurisdiction peculiar and

exclusive to that effect? What is the relief prayed in the bill? That the various conveyances of the property, personal and real, alluded to in the bill may be declared fraudulent, and decreed to be cancelled; that an account be taken of the interest of said John Snodgrass in said property, also of the rents, issues, and profits of said property, during the time it has been so fraudulently held under said conveyances; that the legal title shall be divested out of those claiming under said conveyances; that the administratrix is a party to the secret trusts and combinations to defeat the creditors of the said John Snodgrass; that a receiver may be appointed to take charge of said property; and that said property may be decreed subject to the satisfaction of the debt due to the complainants, who are judgment creditors.

Now, what portion of the relief thus prayed, falls within the powers of a probate court? The jurisdiction of that court is specifically defined in the clause of the constitution which creates the court. The 18th sect. 4th art. of the constitution provides, "that a probate court shall be established in each county of this state, with jurisdiction in all matters testamentary, and of administration, of orphans' business, and the allotment of dower; in cases of idiocy, and lunacy, and of persons *non compos mentis.*"

So limited is its power, in reference to setting aside matters for fraud, that it can only entertain applications to vacate its own orders and decrees procured by fraud, confirming settlements, and acccounts of its own officers (executors, administrators, and guardians appointed by it—deriving their very official existence from it, and acting constantly under its supervision,) at the terms at which they were rendered. See *Smith* v. *Denson*, 2 S. & M. 326; 3 Ib. 302; 5 Ib. 74.

This court has repeatedly held, that the jurisdiction of the Probate Court is limited by the terms of the clause of the constitution which creates it, and that its powers shall be confined strictly within those limits. *Smith* v. *Craig*, 10 S. & M. 447.

It is not a forum for the trial of conflicting titles to property, either personal or real; even when such trials may relate to matters and things which come within the jurisdiction of probate courts, after the question of title has been settled.

Where the property is pretendedly held adversely to the intestate, but is fraudulently and in secret trust so held for the benefit of his estate, and the administratrix is not charged or suspected of acting collusively with the person so holding, the administratrix will not assume the responsibility of charging herself with such property in her inventory. When the administratrix is acting collusively with those holding the legal title, as above, she will not thus charge herself; not because of the liability it imposes upon her, but because she thereby makes the property assets in her hands, and it becomes at once subject to the payment of debts of the intestate—the very thing she was combining to prevent.

But the charges of fraud, fraudulent conveyances, secret trusts —necessity for ordering accounts, appointing receivers, vacating legal titles, and establishing equitable ones—removing clouds from over titles, which diminish the value of the property, and the securities of creditors, entitled to subject that property to the satisfaction of their demands—the combination of the administratrix with those holding the legal titles, in fraud of the creditors—are all so many subjects falling peculiarly and exclusively within the jurisdiction of courts of equity. Where would the limitations upon the powers of a court of probate begin or end, if these subjects were held to belong to them?

I maintain *that no part of the relief* sought by the bill, falls within the jurisdiction of a court of probate. Suppose, however, that I am mistaken in this, still there are some portions of the relief sought, which it is clearly incompetent for the Probate Court to grant, and yet it is relief which the complainants are palpably entitled to.

When the remedy is more complete in a court of chancery than at law, the former will take jurisdiction. *Caleb* v. *Martin,* 1 How. 558; *McRea* v. *Walker,* 4 Ib. 455; *Grant* v. *Lloyd,* 12 S. & M. 191.

This court have said in the above cases—remarking upon the remedy being more complete in equity than at law—that such would be held to be the case, where the distributees of an estate are seeking to recover the property of their ancestor, and also the profits of it from the former administrator, and other persons in

possession of the property, claiming under him; even though they might have a remedy at law, they will be entitled also to relief in equity; especially if the property sought by the distributees was owned in part by the administrator, in his own right, the interposition of a court of equity will be essential to settle the matters of account between the parties. And in a later case, referring to the above case, this court said the rule would be otherwise, if the administrator were the only party. *Baines* v. *McGee*, 1 S. & M. 208.

What greater right can distributees have upon the state of facts disclosed in the above cases, to proceed in a court of equity, than complainants have upon the facts stated in this bill? This is a proceeding against the administratrix, the heir at law, and other persons in possession of the property, claiming under the intestate. The case cited above, was a bill filed by distributees to recover the property of their ancestor, and the profits of it, from the administratrix and others in possession, claiming under him. Surely creditors have equal rights with distributees, in invoking the aid of a Court of Chancery to reach the estate of the intestate, especially under the circumstances of fraud and secret trust recited in this bill.

Where the real character of the transaction is concealed under a trustee's name, a court of equity will interpose and lend its aid to place the party injured in the situation he would have been in, provided no fraud had been committed. *Stovall* v. *Northern Bank*, 5 S. & M. 17.

We do not deny, that there are cases in which the Probate Court has the power to compel the administrator, "to alter or modify the schedule of inventoried property, or to add to or deduct from that list," to borrow the language of counsel for appellants. We only say, that this case is wholly unlike the cases cited by the counsel of *Kilcrease* v. *Kilcrease*, 7 How. 316; and of *Carmichael* v. *Browder*, 3 Ib. 258; unlike in its facts, and demanding the application of altogether different rules of construction. And this court have constantly admonished counsel, that its decisions are to be referred strictly to the state of facts, disclosed in the record of the particular cases.

But if all were conceded, which can, by the most liberal construction and application of the rules deduced from the cases cited by adverse counsel, be claimed, still, the jurisdiction of a court of probate would be inadequate to afford the relief which is prayed in this bill, and to which the complainants are clearly entitled. No account of rents, profits, &c., with which the holders of the property are chargeable, during the time it has been so fraudulently held,—and in secret trust,—could be ordered or taken in the Probate Court,—no clouds of title could be removed; no cancellation of colorable conveyances be decreed.

Taking counsel upon their own hypothesis,—upon their own principles; if a court of equity possesses either exclusive or concurrent jurisdiction with a court of probate to decree a portion of the relief prayed, the bill should be retained, (the demurrer overruled,) to enable it to decree that much relief. But, we insist, that a court of equity, having jurisdiction to afford relief for one purpose, and exercising it for that, will retain the bill, and accord all the relief to which the party is anywhere entitled. This is too well established to require the citation of the cases decided by this court. The questions here involved are not mere questions of administration.

As to the second, third, and fourth points, relied on in support of the demurrer, with the utmost respect for the counsel making them, I do not consider that they present any question worthy of consideration.

As to the fifth point relied on, to wit, that as to the personalty, the complainants are barred by the Statute of Limitations of three years, I need only refer to the recent decision of this court, in the case of *Sugg and another*, delivered a few days since, as containing the clearest exposition of the law upon that subject, I have any where met with, and as establishing a sound and equitable construction of the Statute of Limitations. I freely admit that the Statute of Limitations may be as meritorious as any other defence which can be interposed; but from the facts and circumstances of each case, a court of equity will determine, whether an unconscientious advantage has been sought or obtained, by the party who interposes it. It would be a solemn farce to admit it

without restriction or qualification, as a conclusive defence in all cases where there had been a lapse of the mere time. It would introduce all the asperities which follow a rigid enforcement, as in courts of law, of general rules. To guard against the injustice, in individual cases, of those general rules, courts of equity were established. It is their boast to afford relief in the very class of cases, where courts of law are incompetent to do so, by reason of their being a "*bed of Procrustes.*"

Were we to admit, which we by no means do, that the defendants would be authorized, under any circumstances, to avail themselves of this defence, or that the bill was obnoxious to a demurrer on this ground, we should still claim the jugdment of the court in our favor, upon the facts disclosed in the record, so clearly showing that the defence is utterly unconscientious and inequitable.

The deed of trust made an exhibit to the bill, is void on its face for many reasons : we shall trust to your honors to detect them at a glance, without further amplification.

*A. Burwell* and *T. A. Marshall*, on same side.

HANDY, J., delivered the opinion of the court.

This was a bill filed in the Superior Court of Chancery by the appellees, the proprietors of a judgment at law, rendered in February, 1852, against the administratrix of John Snodgrass, deceased, and which remains unsatisfied. The object of the bill is to set aside several fraudulent conveyances and arrangements made by John Snodgrass, in his lifetime, and continued by his administratrix, in combination with several other parties, by means of which his personal and real estate is colorably placed beyond the reach of execution at law, or in such a condition as to render the enforcement of the judgment embarrassed and uncertain, and also to bring into the estate, for the payment of its debts certain assets, which are now fraudulently covered up, and placed beyond the power of being subjected to the judgment at law. The administratrix, and the heirs of John Snodgrass are made parties, (the alleged fraudulent conveyances embracing both personal and real estate); also.

the several persons implicated in the alleged fraudulent arrangements.

The defendants demurred to the bill, which being overruled, the case is thereupon brought here by appeal, and we are to consider the propriety of the grounds of demurrer.

The first ground of demurrer is, that the Probate Court was the proper tribunal to grant the relief sought, or such relief as could properly have been granted, and therefore that a court of equity had not jurisdiction.

In support of this view it is said, that the estate of John Snodgrass being in the course of administration in the Probate Court, it was within the power of that court to compel the administratrix to alter and enlarge the inventory of property of the estate, by including in it the property embraced in the alleged fraudulent conveyances, and that the complainants, as creditors of the estate, would have had the full benefit of the property and assets of the estate, through the medium of the tribunal to which its administration was properly and exclusively committed by law. But we do not consider this position at all tenable.

We do not doubt but that there may be cases in which an administrator may be required to embrace in his inventory property of the estate not already contained in it. This, however, would scarcely be done, unless it were clearly shown that the property belonged to the estate, and that it was omitted through the negligence or fraud of the administrator, without any adverse claim set up to it by other persons, or without circumstances showing that the title of the intestate had been divested. And probably he might be required to inventory the property in all cases in which he would be held accountable for it, as assets of the estate on his final settlement, but in no other cases. For otherwise he might be compelled to subject himself to a *primâ facie* liability for the property, by including it in his inventory, when it might not really be the property of the estate,—a position of hazard and responsibility which it would be unjust to coerce him to assume.

But if the administrator could be compelled to include in his inventory, property situated as that in this case is alleged to be, it would still be unavailable in the payment of the debts against

the estate. The administrator could not impeach the validity of the conveyances, by which the property was fraudulently conveyed by the intestate to the parties holding it, because such conveyances, though void as to creditors, are valid between the parties to them and their representatives. He could never maintain a suit to set aside such fraudulent conveyances, or to recover the property on the ground of the fraud therein, and of course, could never by his own action bring the property into the estate for the benefit of its creditors. *Ellis* v. *M'Bride*, 27 Miss. 155.

It was, therefore, necessary that the creditors should proceed by bill in chancery, to set aside the alleged fraudulent conveyances, and thereby remove the obstructions to the enforcement of their execution.

There is no force in the objection that the bill could not be filed because the estate was insolvent, for it does not appear that it has been declared insolvent; and if such had been the case, the prohibition of the statute against commencing any suit against an administrator after the estate shall be represented insolvent, does not apply to a suit like the present, the object of which is to benefit the estate by subjecting to the payment of the debts, property which would otherwise be lost. The effect of it is, therefore, beneficial to the estate, without charging it with the burthen of costs, which it was the chief object of this provision of the statute to prevent.

The second ground of demurrer is, that the bill is multifarious, including several parties as defendants who have no interest in the suit, and against whom no relief is prayed, seeking to reach both the real and personal estate of the intestate, the heirs and administrator of Edwards, and to adjust the partnership of Edwards and Snodgrass; also a discovery and account from the heirs of James Snodgrass, the original pretended purchaser.

All these parties are alleged to have been connected with the fraudulent transactions; and the accounts prayed, and interests sought to be adjusted, appear to be necessary, in order to ascertain the condition of the estate of John Snodgrass, and what property or assets will be subject to the claim of the complainants. The object of the bill is to set aside fraudulent conveyances, and in

some instances, to ascertain the rights of the intestate connected with these transactions, with a view to remove impediments in the way of the execution of the complainant's judgment; and we think it was proper to include all the parties connected with these transactions in the same bill. It prevents multiplicity of suits, and tends to save expense, and falls within the rule recognized in *Butler* v. *Spann*, 27 Miss. 234.

The next ground of demurrer is, that the bill cannot be maintained to set aside the conveyances as to the real estate, because the judgment being against the administratrix, was not a lien upon the land, and because a bill to set aside a fraudulent conveyance will not lie where there is no lien.

The general rule is certainly well established, that "in order to obtain relief by bill in equity to assist the execution of a judgment at law, the creditor must show that he has proceeded at law, to the extent necessary to give him a complete title. If he seeks aid as to real estate, he must show a judgment creating a lien upon such estate; and if he seeks aid in respect to personal estate, he must show an execution giving him a legal preference or lien upon the chattels." *Brinkerhoff* v. *Brown*, 4 Johns. Ch. R. 677. Under our laws, a judgment, which operates as a lien upon the property sought to be charged, would be sufficient.

This is the rule applicable to cases where property legally liable to execution has been fraudulently conveyed or encumbered, whereby the operation of the legal lien is obstructed, or its full enjoyment, by sale of the property, is prevented, and where, after the obstruction is removed by a court of chancery, the execution may be levied.

But the rule is equally well settled, that where the transaction has assumed such a form, or the property has been placed in so peculiar a condition, or is of such a nature, that it could not be subjected to an execution at law, relief may be had in a court of equity; and in such a case, it is sufficient if the creditor has established his debt by judgment at law, in such mode as to show that it is an ascertained and fixed debt, and entitled to payment and satisfaction out of the property of the debtor liable to its payment under the laws of the land. *O'Brien* v. *Coulter*, 2 Blackf. 423; *M'Der-*

*mutt* v. *Strong*, 4 Johns. Ch. R. 687. And in the case of *Russell* v. *Clark*, 7 Cranch, 89, it is held by Marshall, C. J., "that if a claim is to be satisfied out of a fund which is accessible only by the aid of a court of chancery, application may be made in the first instance, to that court, which will not require that the claim should be first established in a court of law." But this rule would probably be applicable only to a case where the debt, from peculiar circumstances, could not be established at law; for the general rule is, that the creditor will not be allowed to call in question the fraudulent transactions of the debtor until he has established his claim against him; for otherwise it might involve him in an oppressive litigation in defence of his property, at the instance of a party who in the end might be found to have no valid debt against him.

If the creditor has established his claim by judgment, and exhausted all the means in his power at law to obtain satisfaction of his debt, without success, he is entitled to the aid of a court of equity, according to the circumstances of the case, in such mode as will enable him to enjoy his just legal right. *M'Dermutt* v. *Strong*, 4 Johns. Ch. R. 690; *Brinkerhoff* v. *Brown*, Ib. 676; *Batsford* v. *Beers*, 11 Conn. 369; *Weed et al.* v. *Pierce*, 9 Cow. 722. He is entitled by our laws, not only to levy his execution of the personal estate of the intestate, if a sufficiency thereof be found to satisfy it, but also through the medium of the Probate Court, to have the real estate sold for the payment of it, if necessary. The real estate conveyed by the intestate in fraud of the rights of creditors, is as much subject to the payment of their debts as the personalty so conveyed; and the creditor should be as much entitled to have obstructions removed, which interfere with his subjecting the former as the latter species of property, to the payment of his debt.

In this case, the creditor has done all that he could do at law, by obtaining his judgment against the administratrix of his debtor, and having an execution issued which was returned "*nulla bona.*" In proceeding to remove obstructions to the enforcement of his judgment, and in subjecting the property alleged to be fraudulently conveyed, he has the right to subject all the property thus situated; for if fraudulently conveyed, it is all equally liable to

the payment of his debt, though it must be reached in different modes. Nor is he to be restricted to the personalty, for that may prove to be insufficient or unavailable, and in that event, he would be driven to a new proceeding against the real estate, which by lapse of time might be doubtful and perhaps unavailing. If the property has been conveyed by the debtor in fraud of his rights, he has the right in one and the same suit to have all the impediments removed, which interfere with the whole property being rendered subject to the payment of his debt, and it is no objection to the proceeding, that it may not require all the property to satisfy his claim.

We think, therefore, that this ground of demurrer was not well taken.

The last ground of demurrer is, that the Statute of Limitations is a bar to the relief sought as to the personalty, as the bill alleges that John Snodgrass, jr., purchased the property in December, 1849, since which time he has been in possession of it, claiming it as his own.

This position does not appear to be sustained by the allegations of the bill, which are in substance, that John Snodgrass, jr., pretended to purchase a portion of the property at the sale in December, 1849, and that the title was conveyed to him, "the property *then going or rather remaining in the possession of the said Margaret*, (the administratrix,) as the head of the family." This averment would not show an adverse possession in John Snodgrass, jr., under claim of title, for the substance of it is, that the purchase by him was pretended, and that the property continued in the possession of the administratrix; so that it neither appears that he had possession of it nor claimed it as his own. In order to constitute adverse possession, as creating a bar to a recovery against him under the Statute of Limitations, it was necessary that he should have claimed the property as his own, and that he should have had possession adverse to that of the administratrix of his father. Her possession must be considered as a lawful possession held by her as administratrix for the use of the estate, if the property belonged in law to the estate, as is alleged in the bill, and

could not with any propriety be said to be the possession of John Snodgrass, jr.

Upon the whole, we think that the demurrer was properly overruled. The decree is therefore affirmed, and the cause remanded, and the appellants required to answer the bill within sixty days.