CRAWFORD'S ADMINISTRATOR v. L. B. LEHR, et al.

1. FRAUDULENT SALE OF PERSONAL PROPERTY; *Void as to Creditors Only.* Where a person conveys personal property with the intention of defrauding his creditors, the conveyance is good and binding as against him and his representatives, including his agents, executors, administrators, and heirs, and is void only as against his creditors whom he intended to defraud.

2. ———— Where a person loaning money, took the note and mortgage given for the money, in his son's name, and gave them to his son for the purpose of defrauding his creditors, the administrator for such person cannot, after his death, maintain an action against the son to recover said note and mortgage, and to restrain the son from collecting the same, even though the estate may be insolvent. Only the creditors of the deceased can maintain an action against the son to deprive him of the benefit of said note and mortgage, and they can do it only for the purpose of subjecting the same to the payment of their claims against the deceased.

*Error from Crawford District Court.*

ALL necessary facts are set forth in the subjoined opinion. The district court, at April Term 1877, gave judgment in favor of the defendants, and the plaintiff, *Loomis*, administrator, etc., brings the case here on error.

*Voss & Flitcraft,* for plaintiff.

*Harris & Spencer,* and *Pursel & Vansyckle,* for defendants.

The opinion of the court was delivered by

VALENTINE, J.: Elmer Loomis, plaintiff in error, as administrator, brought this action against the defendants, alleging in substance, that L. F. Crawford, his intestate, had during his lifetime loaned a sum of money to the defendant L. B. Lehr, and had taken a note for the money loaned (and also a mortgage to secure the same) in the name of his son, the defendant Geo. W. Crawford. That he, L. F. Crawford, was insolvent at the time, and that this was done for the purpose of preventing his creditors from reaching the money thus loaned. The plaintiff sought to enjoin Geo. W. Crawford from collecting the money due on the note, and also sought to have the same administered as part of the assets of the estate of the intestate. A demurrer was filed to the petition, which was sustained by the court below; and to reverse this ruling the plaintiff now brings the case to this court.

The plaintiff's counsel says that there is but one question in this case, and that is this:

"Can an administrator, by virtue of the power and authority vested in him under a proper statutory appointment to said office, recover property which the decedent had given to his children during the lifetime of the ancestor, provided he, the said decedent, was indebted to the extent of insolvency at the date and time of the gift, and, after his death, without the money and property thus given away, his estate would not pay its debts? Now, can an administrator recover money and property thus given away? And, if not, why not?"

We think counsel for plaintiff has stated the question rather too broadly. It is not, whether the administrator can "recover property," etc., for the word "property" includes all property, real as well as personal, while the question is only, whether he can thus recover *personal* property. The statute provides in express terms, that "the *real* estate liable to be

*Statement of the case.*

sold " by the administrator to pay the debts of the deceased, "shall include all that the deceased may have conveyed with intent to defraud his creditors." (Gen. Stat. 454, sec. 116.) And hence it might be inferred from this statute, that the administrator might in some cases recover real estate or real property which had previously been conveyed by the deceased to defraud his creditors. But as there is no similar statute applicable to personal property, no such inference can be drawn from the statutes with reference to personal property.

Indeed, the inference from the statutes might be against the authority of the administrator to recover personal property conveyed by the deceased to defraud his creditors; for, *expressio unius, est exclusio alterius.* That is, the expressly giving the administrator the power to sell real estate, would be to exclude any similar power with reference to personal property; for personal property is not mentioned in the statute. But it may be claimed however, that another inference favorable to the plaintiff may be drawn from this statute, and that is, that the administrator acts for the creditors of the estate as well as for his intestate, and that he is their representative as well as the representative of the deceased. This inference however is very weak, for if the estate is entirely solvent the administrator would be acting entirely for the benefit of the estate, and not for that of the creditors by selling land to pay the debts of the estate which land the deceased had previously sold, and by reserving the other land for the benefit of the estate which land had not previously been so sold by the deceased. The creditors could have no possible interest in selling land to pay their debts, which had previously been sold to others by the deceased, in preference to land which had not been so sold by the deceased. Their only interest is in getting their pay; and it can make no difference to them whether they get it from one class of land, or the other. It will be noticed that the statute has no reference to insolvent estates. Land sold by the deceased to defraud his creditors, may be sold by the administrator as well where the estate is

1. Fraudulent sale of personal property, void only as to creditors.

solvent, as where it is insolvent. The inference therefore in favor of the plaintiff, drawn from said statute, is not stronger than the inference which may be drawn from the entire statute against him. We therefore think we may decide the question involved in this case independent of said statute, and aside from said statute. We think we may decide it upon authority and upon general principles.

Nearly all the authorities are against the power of the administrator to sell, or to recover from the fraudulent vendee, or to use as assets of the estate (without the consent of the fraudulent vendee) property which had previously been sold by the deceased to defraud his creditors. Among said authorities are the following: *McLaughlin v. McLaughlin*, 16 Mo. 242; *Brown v. Finley*, 18 Mo. 375; *George v. Williams*, 26 Mo. 190; *Martin v. Martin*, 1 Vt. 91; *Moody v. Fry*, 3 Humph. (Tenn.) 567; *Sharp v. Caldwell*, 7 Humph. 415, 416; *Dunbar v. McFall*, 9 Humph. 505; *Commonwealth v. Richardson*, 8 B. Mon. (Ky.) 81, 93; *Winn v. Barnett*, 31 Miss. 653; *Gully v. Hull*, 31 Miss. 20; *Snodgrass v. Andrews*, 30 Miss. 472; *Ellis v. McBride*, 27 Miss. 155; *Crosby v. DeGraffenried*, 19 Ga. 290; *Chouteau v. Jones*, 11 Ill. 300; *Osborne v. Moss*, 7 Johns. (N. Y.) 161; *Ordronoux v. Helie*, 3 Sandf. (N. Y.) Ch. 512; *Cobb v. Norwood*, 11 Texas, 556; *King v. Clarke*, 2 Hill (S. C.) Ch. 611, 613; *Williams v. Williams*, 34 Penn. St. 312. All the authorities hold, (except where there are express statutes to the contrary,) that when a person conveys his property, real or personal, for the purpose of defrauding his creditors, the conveyance is good and binding upon him, and upon all his representatives, whether such representatives be his agents, his executors, his administrators, or his heirs. As to him and all his representatives, the title to the property has passed irrevocably, except with the consent of the fraudulent vendee. The sale or conveyance is void only as against the *creditors* of the fraudulent vendor, and is not void as against him and his representatives. The authorities above cited hold that the administrator is the

2. Fraudulent sale of property, real and personal.

Administrator not the representative of creditors.

representative of the deceased alone, and is not the represent-
ative of his creditors; and hence it follows, as they hold, that
the administrator cannot do any act to disturb any sale or
conveyance made by his intestate for the purpose of defraud-
ing creditors. Of course, each creditor has the right to treat
such a sale or conveyance as void to the extent of his debt.
But the administrator, not being the representative of the
creditors, but representing an antagonistic interest to them,
cannot found any action or right of action upon their rights.
But all creditors do not have this right to treat the sale or
conveyance of their debtor as void; and how shall the ad-
ministrator know which of the creditors have this right, and
which do not have it? Suppose the administrator sues the
fraudulent vendee for the recovery of the property which the
fraudulent vendee has obtained from the deceased fraudulent
vendor; and suppose that the vendee sets up and proves
that there are only five creditors, or supposed creditors, in
all—A., B., C., D., and E.; that A. was a party to the origi-
nal contract by which the vendee obtained said property;
that B. for a valuable consideration paid by the vendee to
him (B.) had ratified the fraudulent conveyance from the
vendor to the vendee, and had released the vendee from his
claim; that C. was a subsequent creditor with full notice of
the conveyance from the vendor to the vendee; that D.'s
claim was fraudulent and void, and not binding upon the
estate, and that the administrator knew it; that E.'s claim
was small, say only ten dollars, while the property in con-
troversy was worth one thousand dollars: what would be the
result? Certainly the administrator should not recover the
property to pay the claim of A., nor of B., nor of C., nor of
D.; and should he recover the whole of the property to pay
the small claim of E.? And suppose that the estate had
property enough to pay a dozen such claims as E.'s: what
then? And suppose that the estate had property enough to
pay fifty cents on the dollar of all the claims, E.'s included:
what then? These are only a few of the many difficulties

Crawford's Adm'r v. Lehr.

which would embarrass the administrator if he were allowed to maintain this kind of action, and if he were allowed to represent all the creditors of the estate, as well as his intestate. But these few difficulties are probably enough to show that it is better to let each creditor take care of his own claim. In the cases we have supposed the estate would have to pay the expenses of the litigation, which each creditor (A., B., C. and D.) might know, so far as his own claim is concerned, would result disastrously to the estate. And if the administrator could sue the fraudulent vendee, he could also of course sue any sub-vendee, and thereby multiply parties and issues, and enhance costs to be finally paid out of the funds of the estate. If an estate is really insolvent, it would be better to give it to the creditors with as little cost as possible, and then let the creditors themselves seek their remedies against fraudulent vendees, than for the administrator to waste the estate in possibly fruitless litigation with supposed fraudulent vendees, as the assumed representative of the creditors. If an estate is solvent, we suppose no one would claim that the administrator could maintain an action against the supposed fraudulent vendee to recover personal property received from the deceased. And if the estate is insolvent, then let the creditors, whose real interest it is to reach all property in the hands of a fraudulent vendee, assume all the risk and expenses of a litigation with such fraudulent vendee.

The judgment of the court below will be affirmed.

All the Justices concurring.