[No. 7,707.—Department One.]

S. L. THELLER ET AL., EXECUTORS OF THE ESTATE OF F. L. A. PIOCHE, DECEASED, *v.* F. L. SUCH.

PROBATE COURT—JURISDICTION.—The late Probate Courts had no power save in certain excepted cases, to settle disputes between the heirs or personal representatives of a deceased person and third persons.

SURVIVING PARTNER—PARTNERSHIP—EQUITY—JURISDICTION—ESTATES OF DECEASED PERSONS—DISTRICT COURT—PROBATE COURT.—If all the members of a partnership die, whether within the jurisdiction of the same or of different Probate Courts, the assets, debts, and credits of the partnership do not become confused with the estate of the last surviver, but continue a separate existence, and the rights of the representatives or successors of the several partners can only be determined in a court of equity.

APPEAL from a judgment for the plaintiffs, in the Superior Court of the City and County of San Francisco. EVANS, J.

The defendant appealed.

*Charles Page,* for Appellant.

Upon the death of Moss and Bayerque, Pioche, the surviving partner, had the right of possession and disposition of the

partnership estate. He became a trustee to wind up the affairs of the partnership, for the benefit of all concerned therein.

There can be no question of the power of an equity court to control this trust. The Probate law, it is true, aids the representative of the deceased partner, by compelling the survivor to render to it an account of his trust; but this proceeding is not by virtue of any jurisdiction or control which it has over the partnership estate, but it is simply for the protection of the estate of the deceased partner, which is under its control.

On the death of the survivor, the partnership estate became subject to the jurisdiction of the Probate Court, as part of the estate of Pioche; charged, however, with all claims against the partnership of partnership creditors, and those of the estates of the deceased partners.

The Probate Court having obtained jurisdiction of the estate of Pioche, and possession, by its officers, of the assets of that estate, had exclusive jurisdiction of the settlement of the estate.

Probate Courts, and the rules regulating the settlement of the estates of deceased persons, known as the probate law, existed under the former Constitution of this State, and were as much a part of its judicial system as the District Court and equity law. It is true that the jurisdiction of the former was limited; nevertheless, in its own sphere it was complete, and in its nature, necessarily exclusive. This view is sustained by consideration of the fact that wherever powers, formerly exercised only by courts of equity, were necessary as auxiliary to the exercise of the Probate jurisdiction, these powers were granted; as, for instance, the right to compel an accounting, the right to compel specific performance, and to make partition. (*Estate of Lewis*, 36 Cal. 306; *Cory* v. *Hyde*, 49 id. 469; *Hill* v. *Den*, 54 id. 6.)

If a court of equity could properly entertain this action, still it could do so only in aid of the Probate jurisdiction, and could only fix, by its decree, the rights of all the parties. It could not take from the Probate Court the property in its possession, and use it to satisfy its own decree.

*Stanly, Stoney & Hayes*, for Respondents.

The late Probate Court had no jurisdiction over the subject-matter. (*Trecothic* v. *Austin*, 4 Mason, 29; *Banks* v. *Wilkes*,

3 Sand. Ch. 101; *Gunter* v. *James*, 9 Cal. 658; *People* v. *Houghtaling*, 7 id. 352; *Lathrop* v. *Bampton*, 31 id. 25; *Pierce* v. *Robinson*, 13 id. 121; *Stanwood* v. *Sage*, 22 id. 518; *Fallon* v. *Butler*, 21 id. 32; *Gleason* v. *White*, 34 id. 263.)

. A surviving partner is a trustee, and as such is amenable to equity jurisdiction.

McKinstry, J.:

The cause was submitted in the Court below upon the agreed statement following:

" Whereas, a certain controversy has arisen and exists between the above-named plaintiffs and the above-named defendant, and in such controversy the question in difference is one that might be the subject of a civil action, of which said action, had it been brought, this Court would have jurisdiction.

" And whereas, the said plaintiffs and said defendant, to the end that said controversy may be speedily and finally determined and ended have agreed to submit said controversy to this Court.

" Now said parties have agreed and hereby do agree to the following case, which contains the facts upon which said controversy depends, viz.:

" That for several years prior to the twenty-first day of August, 1855, a commercial copartnership existed between F. L. A. Pioche, J. B. Bayerque, and Samuel Moss, Jr., under the firm name and style of 'Pioche, Bayerque & Co.'; that said Moss died on or about the 21st day of August, 1855; that at time of the death of said Moss, the said partnership was seized and possessed of a large amount of real and personal property, situate in the State of California, and were largely indebted; that portions of the real estate belonging to said copartnership stood of record in the names of each of said copartners; that that part thereof which stood in the name of the said Moss was under and by virtue of the orders of the then Probate Court of this city and county (that Court having jurisdiction of his estate), duly conveyed by the executors of his estate to the said Pioche and the said Bayerque, in trust for the settlement of the copartnership affairs; that thereafter the said F. L. A. Pioche and J. B. Bayerque continued to conduct and carry on the busi-

ness theretofore conducted by the said partnership of Pioche, Bayerque & Co., under the firm name and style of Pioche & Bayerque, until the death of J. B. Bayerque, on the 21st day of February, 1865, using in the business of said last-named firm all of the assets and properties of the said firm of Pioche, Bayerque & Co., and never settled the affairs of the said firm of Pioche, Bayerque & Co.; that the said J. B. Bayerque died on the 21st day of February, 1865, leaving a last will and testament, which was duly admitted to probate in and by the late Probate Court of the city and county of San Francisco (that Court having jurisdiction of his estate); that at the time of the death of said J. B. Bayerque, a large amount of real property belonging to said firm of Pioche & Bayerque, or Pioche, Bayerque & Co., stood of record in the name of the said J. B. Bayerque, and which was thereafter, under and in pursuance of the order and decree of said Probate Court duly made, conveyed by the executors of the estate of the said J. B. Bayerque to F. L. A. Pioche, in trust for the settlement of the copartnership affairs; that after the death of J. B. Bayerque, the said F. L. A. Pioche, the surviving partner of said firms of Pioche, Bayerque & Co. and Pioche & Bayerque, continued to conduct and carry on the business which had theretofore been conducted by said firms, until his death, on the 2d day of May, 1872, under the firm name and style of Pioche & Bayerque, and with the capital and assets of said firms, and never settled or adjusted the affairs of either of said firms or copartnerships; that the said F. L. A. Pioche died on the 2nd day of May, 1872, in the city and county of San Francisco, where he resided, leaving a last will and testament, which was duly admitted to probate in and by the late Probate Court in and for said city and county, and such proceedings were thereafter duly had; that letters testamentary upon the estate of the said F. L. A. Pioche were duly issued to the said Samuel L. Theller, Gustave Dussol, and Gustave Touchard, who are now the sole executors of said estate; that by virtue of their office of executors of said estate of the said F. L. A. Pioche, the plaintiffs took possession and control, and still have possession and control, of a large amount of property, real and personal, situate in this State; that immediately after the qualification of the executors of the estate of

the said F. L. A. Pioche, the said executors duly published the statutory notice to the creditors thereof, to present their claims against said estate within the statutory period, or else the same would be barred, and said time has long since expired; that a large number, aggregating a large amount of claims, were presented to said executors by persons claiming to be creditors of the firm of Pioche, Bayerque & Co.; that a large number of other persons, claiming to be creditors of the firm of Pioche & Bayerque, likewise presented to said executors claims aggregating a large amount; that all of said claims were disallowed by the said executors, and more than two hundred suits at law were instituted against them upon each of said classes of claims; those persons so presenting claims arising out of the transactions of the old firm of Pioche, Bayerque & Co. notified said executors that they claimed that all the assets which had come to their hands by virtue of their office, as executors of the estate of the said F. L. A. Pioche, were the property and assets of the firm of Pioche, Bayerque & Co., and that no part of the same were the assets or property of the firm of Pioche & Bayerque, or of F. L. A. Pioche; and those presenting claims arising out of the transactions of the firm of Pioche & Bayerque, notified them that they claimed that all said properties and assets were the property and assets of the firm of Pioche & Bayerque, and that no part of the same were the property and assets of the firm of Pioche, Bayerque & Co., or of the estate of F. L. A. Pioche; that the executors of the estate of the said F. L. A. Pioche were also notified that the heirs of the said Samuel Moss, Jr., claimed that all of said properties and assets were the property and assets of the said firm of Pioche, Bayerque & Co., and that none of the claims presented to them arising out of the transactions of the firm of Pioche & Bayerque should be paid therefrom, or out of the proceeds thereof, and that they were entitled to all of said property and assets; the said executors were also notified that the heirs of the said J. B. Bayerque claimed that all of said assets and properties were the property and assets of the firm of Pioche & Bayerque, and none of the claims presented to them arising out of the transactions of the firm of Pioche, Bayerque & Co. should be paid therefrom, or out of the proceeds thereof. The said executors were also noti-

fied that the devisees and legatees of the said F. L. A. Pioche
claimed that all of said properties and assets were the assets and
property solely of the said F. L. A. Pioche, and that none of
the claims which had been presented to said executors as arising
out of the transactions of the said firms of Pioche, Bayerque &
Co., or Pioche & Bayerque, were valid, legal, or equitable claims
against the estate of the said F. L. A. Pioche.

"That thereupon the said Samuel L. Theller, Gustave Tou-
chard, and Gustave Dussol, as executors of the estate and last
will of the said F. L. A. Pioche, filed their bill in the late
District Court of the Twenty-third Judicial District of the
State of California, in and for the city and county of San Fran-
cisco, against all persons who had presented to them claims
arising out of the transactions of said firms of Pioche, Bay-
erque & Co., or Pioche & Bayerque, and against all other per-
sons that they could ascertain were ever, in any manner,
creditors of said firms, the indebtedness to whom they had no
evidence had been paid, and against the executor of Samuel
Moss, Jr., and the heirs at law, and devisees and legatees of the
said Samuel Moss, Jr., the said J. B. Bayerque, and the said
F. L. A. Pioche, requiring said defendants to interplead therein.

"That a true copy of said bill in equity is hereto annexed,
marked 'Exhibit A,' and made a part of this agreed case.

"That defendants, representing all classes of persons claim-
ing any interest in said properties and assets, duly appeared
and filed their answers in said suit.    That said suit was,
by virtue of the present Constitution of this State, duly trans-
ferred to the Superior Court of the city and county of San
Francisco.    That all of the parties to said suit were served
with the process of said Court, either personally or by publica-
tion.

"That all of those persons who had presented to the said
executors of the estate of F. L. A. Pioche claims purporting to
arise out of the transactions of the said firms of Pioche, Bay-
erque & Co., and Pioche & Bayerque, appeared in said suit and
filed answers therein.

"That the executor of Samuel Moss, Jr., and the heirs,
legatees, and devisees of the said *Samuel Moss, Jr.*, the said *J.
B. Bayerque*, and the said *F. L. A. Pioche*, severally appeared
and answered in said suit.

" That the defaults of all of the defendants in said suit who did not appear and answer were duly entered therein.

" That none of the defendants sued as creditors, whose defaults were so entered, ever resided in the United States; and at the time of the commencement of said suit and the entering of said defaults, the plaintiffs had no evidence or information whether said defendants or any of them were or were not alive, and none of them ever presented to plaintiffs any claim against the estate of their testator, or against the property or assets in their hands; but among the defendants who did appear and answer in said action were numerous defendants, who held and asserted claims against said property and assets of a character identical in all respects with those supposed to be held, or in fact held, by said defaulted defendants.

" That, with a few exceptions, the defendants who failed to appear or answer in said action, and whose defaults were entered as aforesaid, were defendants named in subdivision fifteen of the complaint in said action, and were persons to whom the supposed obligations mentioned in said subdivision were originally issued and delivered. That among the defendants who appeared and answered in said action were a large number who claimed to be the assignees of and who held assignments of the original obligations so issued to said defendents who defaulted; and the number of original obligations so held by said assignees comprised more than two-thirds, both in number and amount, of the obligations so originally issued and delivered to the said defaulted defendants; and said assigned obligations so set up represented the entire obligations so issued and delivered to more than two-thirds of said defaulted defendants.

" That thereafter, on the 19th day of October, A. D. 1880, upon the written stipulation of all the parties to said suit who had appeared therein, a decree was made and entered in said suit, in the words and figures following (so far as the question herein involved is affected thereby), viz.:

" ' In accordance with the stipulation of the parties hereto, filed herein, it is hereby, by the Court, ordered, adjudged, and decreed as follows, viz.:

" '*First*—That all the properties and assets, real and personal, mentioned or referred to in the complaint herein, were

held by the late F. L. A. Pioche at the time of his death, not as his individual estate, but as the surviving partner of the firms and copartnerships of Pioche, Bayerque & Co., and Pioche & Bayerque, mentioned and referred to in the complaint.

" ' *Second*—That the said properties and assets are not held by the plaintiffs herein as the estate of their testator, the said F. L. A. Pioche deceased; and the same are not, nor is any part thereof, subject to administration as the estate of F. L. A. Pioche, deceased.

" ' *Third*—That the plaintiffs hold said properties and assets in the same manner as they were held by their testator; that is to say, as trustees for such persons as are entitled to the properties and assets of the said firms and copartnerships of Pioche, Bayerque & Co., and Pioche & Bayerque, or to any claim against or charge upon the same.

" ' And whereas, it appears to the Court, from the stipulation of the parties hereto, herein filed, that the said parties have agreed upon a basis for the compromise and settlement of all the issues presented or raised by the pleadings herein, and for the final disposition of all the properties and assets referred to in the complaint herein; and that it is necessary, for the carrying into effect of said agreement of compromise and settlement, that certain of said properties and assets should be sold and disposed of, in order that the same should be turned into money.

" ' It is therefore ordered, adjudged, and decreed by the Court that the plaintiffs, the said Samuel L. Theller, Gustave Dussol, and Gustave Touchard, do immediately proceed to sell, for cash, at either private or public sale, at the best obtainable price or prices, that part or portion of the estate, property, and assets now in their possession or under their control, and being a part of the properties and assets referred to in the complaint herein, as is hereinafter particularly described, that is to say :

" ' All those certain blocks, lots, tracts, pieces, or parcels of land, situate, lying, and being in the city and county of San Francisco, State of California, and bounded and described as follows, viz. :          *          *          *

" '*Fourth*—All that certain tract, piece, or parcel of land bounded on the north by Twenty-second street, on the east by

Douglas street, on the south by Elizabeth street, and on the west by the Ocean House road, containing seventeen and fifty-nine one hundredths of land, and being known and designated as " the Pioche Reservation."    *    *    *

" ' And it is further ordered, that the said Samuel L. Theller, Gustave Dussol, and Gustave Touchard do report to this Court any and all sales of real estate made under and by virtue hereof, and upon the approval and confirmation thereof by this Court, and the receipt of the purchase-money therefor; that they shall make, execute, acknowledge, and deliver to the purchaser or purchasers thereof a deed or deeds, conveying to such purchaser or purchasers all of the right, title, and interest which their testator, the said F. L. A. Pioche, had therein at the time of his death, all the right, title, and interest which the estate of their said testator has acquired therein since his death, and all the right, title, and interest therein of the said firm of Pioche, Bayerque & Co., and of Pioche & Bayerque, and of all and every of the parties to this action.

" ' And for the purpose of making said conveyance or conveyances, the said Samuel L. Theller, Gustave Dussol, and Gustave Touchard are hereby appointed Commissioners of this Court, with full power and authority to make such conveyance or conveyances, not only as executors of the last will and testament of the said F. L. A. Pioche, deceased, but as trustees of said several firms, and all the right, title, and interest which any party to this action may now have in and to the aforesaid lands and tenements.'

" That under and by virtue of and in pursuance of said decree, the plaintiffs bargained and contracted to sell to the defendant the tract or parcel of land above described, and the defendant bargained and contracted with them to purchase the same, and to pay them therefor the sum of $20,000, if the title to the same should, upon examination, prove to be good.

" That the defendant objected to the title to said premises, and refused to complete his purchase thereof, solely upon the ground that said District Court and said Superior Court had not, nor had either of them, jurisdiction over the subject-matter of said suit, or jurisdiction in said suit to make said decree hereinbefore mentioned; but that, on the contrary, the former

Probate Court in and for the city and county of San Francisco, and now the Superior Court in and for said city and county, acting as in its probate jurisdiction, and in the matter of the estate of said F. L. A. Pioche, deceased, only, could order or confirm a sale of any of the real estate so as aforesaid held, possessed, and controlled by plaintiffs; and that for that reason a deed or conveyance from said plaintiffs, made and executed under, by virtue, and in pursuance of said decree, and of an order of said Superior Court made and entered in said action, confirming said sale by said plaintiffs to said defendant, would not operate to pass the title to him.

" That said plaintiffs claim and assert that said District Court had jurisdiction over the subject-matter of said action, and that said Superior Court had and has jurisdiction over the subject-matter of said action; and had jurisdiction to make and enter said decree, and to confirm all sales of real estate made by virtue and in pursuance thereof, and in obedience thereto; and that a deed or conveyance made and delivered by them under, by virtue, and in pursuance of said decree and said confirmation, would operate to pass the title to the grantee therein named (which conveyance they have duly offered to make and deliver to defendant), and that said real estate being held by said F. L. A. Pioche, deceased, in his lifetime, as the surviving partner of said copartnerships, and as a trustee for those interested in and entitled to the property and assets of said copartnerships, that the same was not and is not subject to administration by courts acting solely within their probate jurisdiction.

" It is therefore agreed that said controversy shall be submitted to this honorable Court for determination, and that if this Court shall adjudge and determine that the claims and assertions of the plaintiffs last hereinabove recited are correct and true, that this Court shall make and render its judgment and decree in favor of plaintiffs and against defendant, directing and compelling said defendant to specifically perform his said contract with plaintiffs, and to receive and accept from them such deed or conveyance of said premises offered by them to him as aforesaid, and thereupon to pay to said plaintiffs said sum of $20,000, the agreed purchase price of said premises;

but that if, on the contrary, this Court shall adjudge and determine that the said objections so as aforesaid made by defendant to said conveyance are good and valid objections, then this Court shall render its judgment in favor of defendant and against plaintiffs, releasing him from all obligation or liability under said contract."

· The bill of equity (Exhibit "A") referred to in the foregoing agreed statement is omitted, as its purpose and scope are sufficiently explained in the portions of the statement quoted. The prayer of the bill is:

" Wherefore, plaintiffs pray that the defendants, and each of them, may be required to appear and answer and interplead herein, in order that said several questions may be adjudicated, and their respective rights in the premises may be adjusted; that if there be any person or persons, now unknown to these persons, who are interested in any of the questions herein involved, and who should be made defendants herein, that the rights and interests of said unknown persons may be adjudicated and settled herein, in connection with the rights and interests of those defendants herein named whose rights and interests are of the same class to which said unknown persons may belong; that it may be adjudicated, decreed, and determined—

" 1st. What (if any) part or portion of said properties and estates now in the charge, custody, and control of plaintiffs are the property and assets of the firm of Pioche, Bayerque & Co.

" 2nd. If any part thereof are assets of said firm of Pioche, Bayerque & Co., whether the estate of Samuel Moss, Jr., has any right, title, or interest therein; and if so, to what extent.

" 3rd. If any part thereof are the assets of said firm of Pioche, Bayerque & Co., whether the said alleged indebtedness of said firm be a legal and valid indebtedness, to be paid out of the proceeds thereof.

" 4th. What part or portion (if any) of said properties and estates are the properties and assets of said firm of Pioche & Bayerque.

" 5th. Whether the said alleged indebtedness of said firm of Pioche & Bayerque be an existing, legal, and valid indebtedness, to be paid out of the proceeds of such portion of said

properties and estates as may be found to be the properties and assets (if any) of said firm of Pioche & Bayerque.

" 6th. As to what is the construction of the will of the said J. B. Bayerque.

" 7th. What part or portion (if any) of said properties and estates was the individual property and estate of the said F. L. A. Pioche ; and

" 8th. Whether any of the said alleged indebtedness of the said firm of Pioche, Bayerque & Co., and Pioche & Bayerque, constituted existing, legal, and valid claims against the estate of the said F. L. A. Pioche; and if so, what portion and amount thereof.

" And that it may be further adjudged and decreed, that such of the defendants as may fail to appear and answer, or interplead herein, have no rights to or interest in the properties and estates in the hands or under the control of plaintiffs.

" And the plaintiffs further pray that they may have the aid and direction of this Court in the administration of said properties and estates, and such other and further relief as may be proper in the premises."

The Court below, in the case now before us, decreed :

" Now, upon due consideration being had, it is by the Court ordered and adjudged that the agreement between the plaintiffs and defendant set forth in said agreed case be specifically performed, and that the plaintiffs execute and deliver to the defendant a good and sufficient conveyance in fee of the following-described premises, viz. :

" All that certain tract, piece, or parcel of land situate, lying, and being in the city and county of San Francisco, State of California, bounded and described as follows, to wit:

" Bounded on the north by Twenty-second street, on the east by Douglas street, on the south by Elizabeth street, and on the west by the Ocean House road, containing seventeen and fifty-nine one hundredths acres of land, and being known and designated as the ' Pioche Reservation.'

" It is further adjudged that the defendant, upon the delivery or tender of said conveyance, do pay to the plaintiffs or their attorneys the sum of twenty thousand dollars, the purchase-money specified in said contract.

" Done in open Court, this 24th day of March, A. D. 1881."

It is claimed by appellant that the late District Court had no power or jurisdiction to enter the decree set forth in the agreed statement, and that the matters which it purports to determine were and are exclusively within the jurisdiction of the Probate Court.

The District Court found that all the property in the hands of the plaintiffs in the action in that Court (plaintiffs in the present action) was held by the late F. L. A. Pioche at the time of his death, not as his individual estate, but as the surviving partner of the copartnerships, " Pioche, Bayerque & Co.," and " Pioche & Bayerque."

The Probate Court has jurisdiction to settle *the estate* of a deceased person, and has no power, save in certain excepted instances, to determine disputes between the heirs or representatives of the deceased and third persons.   The assets, which pass to the representatives to be administered under the proper direction of the Probate Court, consist of the individual estate of the decedent.   This clearly appears, not only from the very nature of the office of the Probate Courts, and the purposes for which they are organized, but also from the following and other sections of the Code of Civil Procedure: §§ 1452, 1453, 1466, 1467, 1469, 1516, 1519, 1522, 1523, 1525, 1536, 1542, 1544, 1555, 1560, 1561, 1581, 1643, 1645, 1651, 1658, 1665.

The ultimate interest of Moss in the partnership of Pioche, Bayerque, and Moss passed, on his death, to his personal representatives, as did that of Bayerque in the partnership of Pioche & Bayerque when this latter partnership was dissolved by the decease of the last named.   The conflicting claims of these several estates cannot be determined by the Probate Court.   If Pioche was still living, the Probate Court in which the administration of the estate of one of his former partners was pending could not state nor settle a disputed account between him and the executor or administrator.   It could only order him, as surviving partner, " to render an account."   But in such case, if the account is not satisfactory, the executor or administrator may maintain against the surviving partner any action which the decedent could have maintained.   (Code Civ. Proc. § 1585.) Of course any resulting balance which may be decreed by a court of equity in favor of the representatives of the estate of

the deceased, as against the surviving partner, belongs to the estate *potentially* from the death of the testator or intestate. But the Probate Court has no more jurisdiction to provide for a partnership account, and decree a balance where the partnership has been dissolved by the *death* of a partner, than where it has been dissolved by any other cause.

Immediately prior to the death of the late Pioche, he held all the property of which he died possessed in trust for the partnerships. Instead of treating the original partnership, or that of Pioche & Bayerque, as dissolved, and proceeding with all reasonable diligence to settle the partnership affairs, he had continued the partnership business with the partnership funds and assets. It is clear that the representatives of the deceased partners respectively had their option to compel Pioche during his lifetime to account as upon a dissolution at the time of the death of the partner, or to account for *all profits*, including those made after the death. The trust with which he was clothed by the law, or which he assumed as a consequence of his conduct, passed with the partnership property to the present plaintiffs. The partnership assets were in the nature of a special fund, subject to be employed in accordance with the duties Pioche had assumed as trustee. As none of the partners are surviving, no one has a better right to the possession of the partnership property than have the present plaintiffs, who have received it *colore officii*, as executors of him who held it, and who have an interest in the residuary rights of his estate.

It would seem to be sufficiently plain that the present plaintiffs were justified in filing a bill in the District Court to obtain a decree settling the conflicting rights of the several estates and defendants therein named, if in a proceeding commenced by any or all of such defendants the present plaintiffs would have been liable as trustees, holding the property in their possession subject to the same trusts wherewith it was held by the late Pioche. That they would have been so liable has been authoritatively settled in this State. In *People* v. *Houghtaling*, 7 Cal. 348, it was held that an administrator sued in equity to compel him to pay over to the county treasurer moneys collected by the intestate as tax collector, could be treated as the trustee of a specific fund constituting no part of the assets of the estate.

Money received by an administrator in payment for goods sold by his intestate, as factor, upon a *del credere* commission, has been adjudged to form no part of the estate, and to be recoverable by the consignor. (*Stanwood* v. *Sage*, 22 Cal. 516.) In *Lathrop* v. *Bampton*, 31 Cal. 25, it was said that if a testator had, at the time of his death, the possession of a trust fund, or other property into which he may have converted it, and such fund or property has come into the possession of his executor, the latter holds it upon the same trusts as did the testator.

As was said by Mr. Justice Rhodes, in *Gleason* v. *White*, 34 Cal. 258, "when a partnership is dissolved by the death of one of the partners, its assets, debts, and credits remain as distinct from those of its late members, until its affairs are wound up, as before the dissolution." It would seem to be equally clear that, if all die (whether within the jurisdiction of the same or of different Probate Courts), the assets, debts, and credits of the partnership do not become confused with the estate of the last survivor, but continue a separate existence; and that the rights of the representatives or successors of the several partners can only be determined in a court of equity, which has the power and machinery for settling those rights by appropriate decree. Here we have the additional element of the assertion of conflicting claims to the same fund or assets.

Our conclusion is, that, upon well-established principles of equity jurisprudence, the District Court had jurisdiction to render the decree which is attacked by appellant.

Judgment affirmed.

Ross, J., and McKee, J., concurred.