Wilson, J.,
delivered the opinion of the court.
This was a suit in equity, originally instituted in the district court by John C. Marshall as plaintiff against Mary Marshall, administratrix of the estate of James Y. Marshall, deceased, the East Denver Savings Bank, and H. E. Pack, as defendants. Plaintiff and the decedent were brothers. The complaint alleges that about May, 1888, the plaintiff removed from Leadville, Colorado, to the republic of Mexico for the purpose of taking charge of a ranch therein belonging to his brother, the decedent, and that he there remained in *507 said employment until June, 1894, soon after the decease of his brother, when he returned. That upon his removal from the state, he was the owner of 12,681 shares of the capital stock of the Allegheny Mining Company, which were on said date, and for a long time before had been, standing upon the books of the company in his, plaintiff’s, name; that he left the certificates of said stock in the iron safe of his brother at his office in Leadville; that during his absence, the said mining company increased its capital stock from 150,000 to 500,000 shares, thus making plaintiff’s said 12,681 original shares amount to 42,270 shares ; that about saul time the decedent, who was then president of the said mining company, for greater convenience of registry, as plaintiff was informed and believed, but without plaintiff’s knowledge or authority, caused the new certificates of said stock for said 42,270 shares to be made out and issued to himself and in his oto name. That plaintiff never authorized said company, its secretary, or anyone, to change the record ownership of said capital stock, upon its books or otherwise, and never consented to said change, either at the time, before or after it was made; and that he never, in fact, knew of said change until after the death of his brother, and his return from Mexico in June, 1894 ; that upon his return, he opened the safe in which he had left his stock, and found therein only three of the certificates originally issued to the decedent for the shares of stock coming and belonging to plaintiff, representing a total of 1270 shares, but he did find in the safe in addition thereto, certificates for 50,993 shares of the stock of the said mining company, belonging to decedent-in his lifetime, and standing in his name, which said certificates plaintiff brought into court, and deposited to abide the result of this action. The complaint further averred that plaintiff had no knowledge as to how the decedent had disposed of the remaining certificates of stock issued to him in place of the stock owned by and due to this plaintiff, except as to one certificate for 30,000 shares, which he charged had been hypothecated to the defendant bank as security for a loan secured by decedent from said bank, and *508 which then stood in the name of defendant Pack upon the books of said bank, as trustee for the bank. Plaintiff further alleged that the estate of decedent was wholly insolvent, and that he would be entirely remediless and would lose all of his stock unless he be allowed to recover the same from the stock found in the decedent’s safe as aforesaid. The prayer was that decedent be declared to have held during his lifetime said 42,270 shares of stock as trustee for plaintiff, with no right or authority to sell, pledge or in any manner dispose of the same, and that his administratrix be adjudged to have no right or title to said stock, or to the unpaid dividend thereon remaining in the hands of the company; that defendants, the bank and Pack, be commanded to deliver up the 30,000 shares of stock held by them, and that in addition to that, recourse be had to the stock found in the safe of decedent and surrendered to the court, to make up the full amount of 42,270 shares. The answer of the administratrix specifically denied on information and belief the material allegations of the complaint, and set up by way of cross-complaint that plaintiff had forcibly entered the safe of decedent, and abstracted therefrom shares of stock belonging to his estate, and also documents and papers of value belonging to the estate. Judgment was prayed that plaintiff be required to turn over and surrender to the administratrix all of said certificates of stock, and all of said documents and papers so taken and held by him. The answer to the cross-complaint denied the taking by plaintiff from the safe of anything save the certificates of stock mentioned and tendered into court. Upon trial, the court found the issues in favor of plaintiff, except as to the 30,000 shares of stock hypothecated to the defendant bank. As to this, the finding was in favor of the bank and its trustee, Pack. It appearing that upon the same day, a decree had been entered in the same court in a suit therein pending wherein one John D. Fleming was plaintiff and the appellant herein was defendant, adjudging and decreeing said Fleming to be entitled to 15,000 shares of the said capital stock, and it appearing that there was not sufficient of the *509 stock to satisfy the said judgment and also the one in favor of plaintiff, and the court finding that both of these judgments were of equal priority, it was decreed that the stock found in the safe should be prorated between the said two judgments. From this decree, the administratrix appeals. The decree so-far as concerns the 80,000 shares of stock hypothecated to the bank not being brought up for review either by appeal or assignment of cross-errors, will require no further notice.
The first question presented, and one upon which the administratrix mainly relies to secure a reversal, is the contention on her part that the district court was without jurisdiction; that it being shown upon the face of the complaint itself and the pleadings that the subject-matter of the controversy pertained to the settlement of the estate of a decedent, the county court of Arapahoe county, from which letters of administration issued, and in which administration was then pending, had exclusive jurisdiction. The constitution provides, article 6, section 11, that district courts shall have original jurisdiction of all causes, both at law and in equity, and. such appellate jurisdiction as may be conferred by law. Article 6,, section 23, provides that county courts “ shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointment of guardians, conservators and administrators, and settlement of their accounts, and such other civil and criminal jurisdiction as may be conferred by law.” It will be observed at the outset that the county court is not given exclusive jurisdiction even in matters of probate. People ex rel., etc., v. Barton, 16 Colo. 78. It is well settled that county courts sitting for the transaction of probate business, are courts of limited jurisdiction. They have no other powers than those given by the constitution and the statute, and such incidental powers as pertain to them for the purpose-of enabling them to exercise the jurisdiction conferred. It is true that it is declared by the constitution to be a court of original jurisdiction so far as probate business is concerned, yet in the exercise of its powers, its jurisdiction is limited and special. People v. Loomis, 96 Ill. 377; Buckley v. Supe *510 rior Court, 102 Cal. 8; In re Maas, 97 Cal. 232; Smith v. Westerfield, 88 Cal. 378. The subject-matter of this contest was specially and peculiarly cognizable in a court of equity, and in such a court only. Conceding that under our laws county courts sitting for probate business are not entirely divested of equity jurisdiction, yet if they have any, it is that only which is incidental to their general powers of adjudicating claims against estates, and even then it does not extend to cases like this, where third parties must be brought into court, and conflicting interests composed and settled. Horner, Probate Law, § 45; Pahlman, Ex'dr, et al. v. Graves, 26 Ill. 405; Moore et al. v. Rogers, 19 Ill. 349; Dixon v. Buel, Adm'r, 21 Ill. 204. This was an action whereby, upon its face, plaintiff sought to enforce a trust against certain property. He cannot therefore be called a creditor within the meaning of the probate law, but must seek relief in a court of equity. Schouler, Adm’rs and Ex’rs, § 419; Gunter v. Janes, 9 Cal. 658; Cooper v. White, Adm’r, 19 Ga. 554. Even, however, if it should be admitted that he was in the position of creditor, it is well known that he might bring his action to determine his claim in the district court in the first instance, and not be compelled to first present it for allowance and adjustment in the county court. Another reason in favor of the jurisdiction of the district court, is that this action was in one sense, in its ultimate results, a contest between an estate and a stranger as to title to property, and it is well settled that in such case, in the absence of special statutory authority, a probate court is without jurisdiction. It is not contended here that there is any such special statute. Schouler, Ex’rs and Adm’rs, § 236; Lynch v. Divan, 66 Wis. 490; Snodgrass et al. v. Andrews et al., 30 Miss. 472; Theller v. Such, 57 Cal. 447; Stewart v. Lohr, 1 Wash. 341. As conclusive of this question, however, we are clearly of opinion that the matter in controversy here was not one pertaining to the settlement of an estate within the meaning either of the constitution or of the statute providing a mode of procedure in county courts sitting for probate business. It might with *511 more reason be claimed that it was such if the administratrix was the moving party in the proceeding, and was seeking to compel the plaintiff to surrender property in his hands belonging to the estate.. In this instance, the plaintiff is seeking to recover from the estate property which he says belongs to him, and of which the estate has possession. It cannot certainly be contended that a probate court upon the facts Stated would have had any authority to cite the plaintiff before it simply because he claimed some right to or interest in the property of the estate. The fact that plaintiff took possession of the stock found in the safe, and that the administratrix in her cross-complaint claims a return of it, does not change the situation. He immediately brought suit for the establishment of his right to it, in a court of equity, the only court in which he could have brought the suit, and deposited the stock in the court, subject to its order, and to the final disposition of the cause.
It is insisted with great earnestness that the plaintiff in this case could recover, if at all, only the identical stock belonging to him, and for which certificates were issued to the decedent, and that if he failed to find or identify this particular stock, then no relief could be granted to him in this form of action, and he must make claim against the estate the same as any other creditor for what might be coming to him. We cannot agree with this contention. Counsel fail to make the distinction between shares of stock and certificates for shares. A share of stock is simply an undivided interest in the capital stock of a company. It is that which is subject to ownership, and one share is identical with and indistinguishable from any other of the same series. The certificate is not the subject of ownership, but is simply an evidence of ownership. Upon the same principle, a bailee or pledgee of property, although ordinarily required to return the same identical property intrusted to him, is not so obligated where the property consists of shares of stock in a corporation represented by certificates. His obligations are fulfilled if he returns certificates for an equal number of *512 shares of the same series. Cook, Stock and Stockholders, § 469; 2 Thompson, Corporations, § 2648; Atkins v. Gamble, 42 Cal. 99. The reason of this rule is very aptly and forcibly expressed in the case last cited. Judge Crockett said: “ Whilst stock in corporations is denominated personal property, and is subject to seizure and sale under execution, and whilst a particular certificate may be capable of complete identification by its numbers or otherwise, the certificate is but the evidence that the holder of it is entitled to an undivided share in the assets and business of the corporation. The stockholders are the joint owners of the franchise and property of the corporation, each being entitled to an undivided share thereof, and the only office of the certificate is to furnish the evidence of the quantum of interest held by the owner of the certificate. ‘ Certificates of stock are not security for money in any sense, much less are they negotiable securities. They are simply muniments and evidence of the holder’s title to a given share in the property and franchises of the corporation of which he is a member.’ Bank v. Railroad Co., 13 N. Y. 626.”
It may be said, therefore, with reference to certificates of stock, as has been said concerning the mingling of trust with private moneys: “ The value being the same, and it being a matter of the most perfect indifference whether parties get the same or other coin, so they get the sum to which each is entitled, there can result no injury to either. Common sense will not discuss the question of identity when nothing useful can result from its determination.” Gunter v. Janes, 9 Cal. 659.
Another reason why the rule contended for by counsel is not applicable and cannot be sustained, is that a trustee cannot by his own voluntary act change his capacity and convert himself into a mere debtor. Gunter v. Janes, supra. If this be true, upon analogy, reason and principle, the death of the trustee could not effect the change. If this were the case, and the estate of the decedent should be insolvent, as is shown in the case at bar, the party in whose favor a trust *513 was clearly established would be wholly without relief. Such a conclusion would be obnoxious to every rule of equity and right. If, therefore, the decedent held in his lifetime the shares of stock in controversy in trust for the plaintiff, his death did not destroy that relation.
These views and conclusions are not in conflict with the doctrine laid down in McClure, etc., v. La Plata County, 19 Colo. 127. The two cases are clearly distinguishable. The objects and purposes of the suits as well as the facts are radically and essentially different and distinct. In that case, it was sought to subject the private estate of a defaulting trustee to the payment of a trust fund that had been by him wrongfully converted, and the court said that while it was not necessary to trace such fund into any particular property, it must first be clearly shown that it went into and was used for the benefit of the estate, before the relief could be granted. In this case, it is sought to establish and enforce a trust in certain property which was alleged to be the identical property intrusted to the trustee. If in the case above cited, the trust fund converted by the trustee had been money, and it had been sought to subject money in the possession of the decedent at the time of his death to the payment of the trust fund, the difficulty encountered in the case would have been entirely obviated. The court certainly would not have held that before the relief prayed for could have been granted, it was first necessary to have been shown that the money converted by the trustee, the identical bills and coin, was found in the money left by the trustee at his death. We have held that there is no more necessity for identification of shares of stock held by a trustee than there is for money intrusted to him.
It is also insisted by the defendant that the laches of plaintiff constitute a bar to this action, and even though the statute of limitations should be held not to apply, yet these laches of plaintiff should have great force with the court in its decision. The particular acts or omission of plaintiff upon which defendant relies to constitute a bar are not pointed out. *514 Waiving the question as to whether defendant has a right to invoke this plea in bar without having specially pleaded the facts which constitute it, or the statute of limitations, it is sufficient to say that it is not available because it does not appear from the evidence that it had been rendered so by any adverse action or claim of the decedent. The trust if once established, was a continuing one, not necessitating that plaintiff should take any steps to assert his rights until it first appeared that such rights had been questioned by some act of the trustee. If it had appeared that the decedent had at any time denied to plaintiff the existence of the trust, or had at any time to the knowledge of plaintiff so used the trust property as to be inconsistent with plaintiff’s ownership of it, then it might with some reason be claimed that from this period the statute might begin to run, or long acquiescence by the plaintiff might in a court of equity be held to constitute such laches as to bar relief. There was no evidence to show such a state of facts in this case, but on the contrary, a condition of affairs was shown from which the court could rightfully conclude, as it must have done, that the plaintiff was not estopped from seeking the relief which he prayed and which was granted.
The plaintiff was not charged with the duty of ascertaining, upon his temporary return to the state in 1892, whether or not the trustee was properly using or holding possession of the trust property, nor upon the facts as disclosed by the evidence was he from that time chargeable with notice that prior thereto the trustee had converted the property to his own use, if such were the case. The trust relationship having been once established, was in the absence of evidence tending to show the contrary presumed to continue. There was nothing shown sufficient to raise a presumption even that the relation had been repudiated or discontinued in 1892, nor at any time up to the death of the trustee, and this suit was instituted within one year after that death. As the trust relationship appears to have continued to exist up to the death of the trustee, laches of the plaintiff, if any prior thereto could not *515 become an equitable bar to the recovery of the trust property. Jones v. Henderson et al., 49 N. E. Rep. (Ind.) 443.
These embrace the material assignments of error discussed and relied upon by defendant. Error is predicated upon the admission by the court of certain testimony, but it is not referred to in the briefs of counsel. An examination of the objections does not disclose sufficient merit in them to justify a reversal of the judgment. They were mainly based upon the admission of numerous exhibits. We see no error in their admission, and think they were entirely competent under the issues.
There is sufficient evidence to support the judgment of the court, and it will therefore be affirmed.
Affirmed.