## SEPTEMBER TERM, 1898.

[No. 3699.]

FRENCH ET AL. v. WOODRUFF.

1. PLEADING—CONSTRUCTION—CAUSE OF ACTION.

Neither the kind of relief prayed for nor the construction placed upon a pleading by the parties is conclusive upon the court as to what is the cause of action set up by the pleading. That fact must be determined by the pleading itself.

2. EXECUTORS—TRUSTS.

An executor of a will may serve in two capacities and have two different sets of duties to perform. As executor he performs the functions of administration, such as receiving and paying out what is due to and from the estate. But in addition to these duties he may be appointed testamentary trustee under the will and have other duties to perform as the donee of a power in trust. Where a will appointed an executor and directed that after payment of debts the residue was to be invested by the executor for ten years for the benefit of, and then distributed amongst, certain named legatees, after the expiration of the time for executing the trust he held as trustee of an express trust and equity has jurisdiction to enforce it, whether he was still acting as an executor or as an ordinary trustee towards the trust property.

3. TRUSTS AND TRUSTEES—PLEADING—PURCHASE OF TRUST PROPERTY BY TRUSTEE.

Where a will appoints an executor and directs that after paying debts the residue of the estate shall be invested by the executor for ten years for the benefit of, and then distributed amongst, certain named legatees, in an action by the legatees against the executor after the expiration of the ten years, a complaint that alleges that the executor while acting as such, indirectly bought for his own benefit the trust property and applied the same to his own use and still wrongfully holds it without the consent of the beneficiaries, states a cause of action in a court of equity, whether or not the administration of the estate is still pending before the probate court.

4. EXECUTORS—FINAL ACCOUNT AND DISCHARGE—TESTAMENTARY TRUSTS—RES JUDICATA.

A final accounting by an executor of his acts executorial, and his discharge by the court in which the probate proceedings were had, while conclusive of all matters embraced therein until set aside in a direct proceeding, do not constitute a bar to a suit in equity

against him to enforce an express testamentary trust, where the conduct complained of is a violation of the trust such as indirectly acquiring the trust property for his own benefit.

5. COURTS—PROBATE MATTERS—JURISDICTION—TRUSTS.

A court of equity has not the power collaterally to correct probate proceedings, but it may investigate the acts of one performing the duties of an executor who has acquired the legal title to property through proceedings in a probate court in violation of a testamentary trust, and declare him to hold the same in trust for the benefit of the *cestui que trust*, even though the inquiry may lead into the probate court, but not to the extent of setting aside its judgments.

6. TRUSTS—TRUSTEES PURCHASING TRUST PROPERTY.

Where a trustee becomes the purchaser of trust property, the *cestui que trust* may maintain an action to set aside the sale or to hold the trustee still a trustee for his benefit, and may require an accounting of all advantages that have accrued to the trustee from the sale, without any further showing than the mere fact of the purchase during the continuance of the trust.

7. TRUSTS—LIMITATION.

In an action to enforce an express trust and to compel an accounting by the trustee, section 2911, Mills' Ann. Stats. which provides that bills for relief on the ground of fraud shall be filed within three years after the discovery of the fraud, is not applicable. If any section of our limitation statutes applies to such an action, it is section 2912 fixing the time within which bills of relief in matters of trust not cognizable by the courts of common law must be filed, at five years. Limitation in such case would not begin to run until the trust is in some way repudiated.

8. LACHES—PLEADING.

The proper method for a defendant to raise the question of laches is by answer and not by demurrer. Where the rights of innocent purchasers are not involved, and a trustee who has appropriated trust property to his own use is still in possession, and full relief can be administered without injury to innocent third parties, and the delay is partly due to the concealment by the defendant of his wrongful acts, the court should not refuse relief to the beneficiaries of the trust because of their laches.

*Appeal from the District Court of Las Animas County.*

To the complaint a demurrer, filed by Thomas T. Woodruff, who alone of the defendants was served with process, was sustained, and the plaintiffs electing to stand thereby, a judgment of dismissal was entered, which is now before us on

appeal. The complaint is very voluminous, but its material averments may thus be stated:

Plaintiffs, residents of Illinois and Indiana, are the heirs at law and legatees and devisees under the last will and testament of James M. Rice, late of the county of Las Animas, state of Colorado, deceased. The will, after providing for the payment of debts and some specific legacies, directs that the residue of the estate, consisting of real and personal property, shall be divided into four equal parts, the amounts of such funds to be severally invested by the executors for the period of ten years from the testator's death, the interest thereon to be paid semiannually, and at the expiration of that period the principal amounts shall be paid over to the beneficiaries, Joanna E. Wallace, Sarah B. French, Eleanor D. Rice and Elizabeth L. Rice.

The testator died December 5, 1879, at Trinidad, Colorado, and Thomas T. Woodruff, one of the executors named in the will, presented the same for probate to the county court of Las Animas county, and was appointed executor in February, 1880, the other two persons named in the will as executrix and executor, Joanna E. Wallace and William B. Collins, not qualifying or acting in that capacity. The executor at once entered upon the performance of his duties, and took possession of all the personal and real property of the estate, the same being situate in Las Animas and Bent (now Otero) counties, Colorado. In April, 1881, he presented to the county court his verified petition asking for an order of the court empowering him, as executor, to sell certain of the real estate described in the petition, for the purpose of paying the debts of the estate, representing to the court that such sale was necessary therefor.

There are apt allegations in the complaint alleging the insufficiency of the petition and the invalidity of the subsequent proceedings under it. Upon the petition the court entered an order authorizing the sale of the property therein described, and the executor thereafter reported that he had

complied with the order and made sale of the premises to Joanna E. Wallace.

The sale, as made and reported, was confirmed, and the executor ordered to make the proper conveyances upon the payment of the purchase price. The complaint then charges that, in carrying into execution the pretended sale, the executor on the 14th of July, 1881, at Trinidad, Colorado, executed and delivered two certain deeds of conveyance to Joanna E. Wallace, the purchaser, one for all the lands situate in Las Animas county, the other for all the lands situate in the county of Bent (now Otero), which deeds were duly recorded in the office of the county clerk and recorder.

It is alleged that these conveyances were fraudulent and void and made with the intent and purpose on the part of the defendants Woodruff and Wallace to deprive the plaintiffs of their interest in said land as heirs at law and devisees of said decedent, and that the sale was for a grossly inadequate price.

On the same day, at Quincy, Illinois, Joanna E. Wallace, grantee of the executor as aforesaid, at the instance and procurement of the defendant Thomas T. Woodruff, executor, executed and delivered to T. Dewey Woodruff, the brother of Thomas T. Woodruff, one certain deed conveying to T. Dewey Woodruff all of the foregoing lands situate in Las Animas county, and a certain other deed conveying all the lands situate in Bent county, both of which were afterwards duly recorded; and it is alleged that both of these conveyances were without consideration and colorable merely, and were taken by the grantee as a mere favor to his brother Thomas T. Woodruff, and without any intent or purpose on the part of the former to profit thereby.

While the record title of this property stood in the name of T. Dewey Woodruff, he gave his brother Thomas T. Woodruff a power of attorney to sell and convey the same; and acting thereunder the latter sold a large portion of said lands, and therefrom realized large sums of money, the exact amount of which the plaintiffs are unable to state; and no account-

ing was ever made by Thomas T. Woodruff to his brother
therefor, but both of them treated the funds derived from
the sale as the exclusive property of Thomas T. Woodruff,.
and he retained them as his own.

Afterwards and on or about the 2d day of January, 1885,
T. Dewey Woodruff conveyed to Thomas T. Woodruff all of
the lands in question situate in the county of Bent, except
those theretofore sold under the power of attorney, and those
sold to Mrs. Wallace, hereafter mentioned, and by a certain
other deed of the same date conveyed to Thomas T. Wood-
ruff what was left of the lands situate in the county of Las
Animas, and it is alleged that no consideration was paid by
Thomas T. Woodruff therefor, but said conveyances were
made and delivered at his special instance and request.   On
the same day T. Dewey Woodruff sold certain of the lands
in both counties to Joanna E. Wallace, which, in turn, she
sold and conveyed to Thomas T. Woodruff, concerning which
the same charges are made as are directed against the convey-
ances from T. Dewey Woodruff to his brother.   In short, it
may be said that the substance of the allegations of the com-
plaint with respect to the lands of the estate sold by the exec-
utor under the order of the court is that they were, in truth
and in fact, made to himself, but that title thereto and the
deeds of conveyance therefor were taken originally in the
name of Mrs. Wallace, and by her conveyed to T. Dewey
Woodruff and by the latter ultimately, and after the expira-
tion of about four years from the time the court made the
order of sale, to Thomas T. Woodruff, and that such circum-
locution was made for the purpose of allaying suspicion of
fraud, and deceiving those interested in the estate, and for
the purpose of having the record appear free from any infirmi-
ties that would have attached had the sale and conveyance
been made direct to Thomas T. Woodruff.

It is alleged that both before and after title was thus ac-
quired by Thomas T. Woodruff, a large amount of the lands
were sold, and that he realized therefrom about $150,000
which in equity belongs to these plaintiffs.   It is further

alleged that the defendant Thomas T. Woodruff still retains the record title to certain of the lands, which are described, and that since he entered upon his duties as executor he has collected rents for the use and occupation of the premises which he has not turned over to the plaintiffs, and which in equity and good conscience he should do.

The complaint further charges that through the fraudulent conduct of the defendant executor, the probate court on August 30, 1891, made a final order approving of the executor's accounts and settling the estate and discharging him as executor, but that, in truth and in fact, no valid order was ever entered discharging said executor, and that the defendant Woodruff to-day is, and from the date of his appointment hitherto has been, the executor of the said last will and testament of decedent.

The complaint further alleges that the plaintiffs had no knowledge or information that title to the lands owned by deceased at the time of his death had been, by means of said deeds or otherwise, attempted to be transferred, or were transferred, from said estate to the said Thomas T. Woodruff; and had no knowledge or information that he claimed title thereto adverse to the estate of said James M. Rice, or adverse to plaintiffs and the other heirs and devisees of said deceased until after the 1st day of September, 1891, and this action was brought on the 3d of September, 1894.

There are other allegations in the complaint of dishonest conduct upon the part of the executor with reference to the compounding of certain claims which the estate held against certain debtors, and also in fraudulently taking title in his own name of land which had been filed upon during his lifetime by the decedent, and the refusal to account to the estate therefor.

Various kinds of relief are prayed for; that the deeds already mentioned should be delivered up and canceled and held for naught; that there be an accounting by the defendant; that the cloud upon plaintiffs' title to these premises be cleared by a cancellation of the outstanding deeds; for a par-

tition of the premises; for a setting aside of the order of the court authorizing the sale; that the court may determine and declare the rights, title and interests of the respective parties to the suit; and for general relief.

The demurrer to the complaint was upon the following grounds:

1. That the complaint did not state facts sufficient to constitute a cause of action.

2. That the court has no jurisdiction of the subject-matter of the action, or the person of the defendant, because the matters involved here are necessarily involved in the matter of the administration of the estate, which is still pending in the county court.

3. The complaint shows that the cause of action is barred by the statute of limitations.

4. The cause of action stated in the complaint is barred by that provision of our limitation act which provides that bills for relief on the ground of fraud shall be filed within three years after the discovery by the aggrieved party of the facts constituting such frauds.

5. That the complaint is indefinite, in that it does not set forth specifically what were the impediments to an earlier prosecution of the plaintiffs' claim; how plaintiffs came to be so long ignorant of their rights, and how and when they first came to a knowledge of the matters alleged in their complaint.

6. That there is another action pending, viz: that of the administration of the estate, wherein the same questions are involved that are sought to be litigated here.

Messrs. GOVERT & POPE and Mr. A. C. McCHESNEY, for appellants.

Mr. J. C. GUNTER, for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

Counsel for defendant Woodruff contends that the sub-

stantive cause of action set forth in the complaint was the active fraudulent acts charged against the executor and his joint wrongdoers, in connection with the administration of the assets of the estate. This is apparent from an inspection of the demurrer itself. That such conclusion has some foundation when the complaint is only casually read, especially in view of the plaintiffs' own construction of their pleading, as evidenced by the various kinds of relief prayed for,—is undoubtedly true. To say the least, there is such a degree of uncertainty about it that the trial court might well have directed a more specific statement had a demurrer for ambiguity and uncertainty been seasonably interposed. But neither the conception of the plaintiffs or defendant, nor the kind of relief prayed for, while they may be considered, is conclusive upon the court as to what the cause of action is which the pleading sets up. That fact must be determined from the pleading itself.

Upon a careful analysis of this complaint, we think it quite clear that the real cause of action stated is the violation by the trustee of his duty to the *cestuis que trustent* in indirectly buying for himself the trust property at the executor's sale.

For the purposes of this opinion, all those averments relating to the invalidity of the court proceedings leading up to the order of sale and its confirmation; the violation of his duty by the executor in fraudulently compounding claims, and taking title to land the right to which belonged to the estate and refusing to account for it; his refusal to render proper accounts to the county court of his doings as executor; the active frauds of the different defendants in buying at the executor's sale for a grossly inadequate price, and other frauds committed;—may be wholly disregarded, and still there is enough left in the complaint to constitute a good cause of action, as we now proceed to show.

By the provisions of the will a trust was created, and the persons nominated as executors were directed to execute it. The trust fund was the residue of the property, real and personal, left after the debts and specific legacies were satisfied.

There was a positive and clear direction that the trust funds should be kept intact and invested by the executors of the will for a period of ten years from the testator's death, and then that it should be divided into four equal parts and distributed to the four residuary devisees and legatees.

When Woodruff was appointed by the court executor of the will, and entered upon the discharge of his duties, he thereby accepted the trust; and while the direction in the will that the investment spoken of shall be made "by the executors of my will" might indicate that the trust was to be carried out by the executors in their capacity as executors, nevertheless, in case of a settlement of the estate and a discharge of the executors before the expiration of the ten years limited as the life of the trust, it is apprehended that the persons qualifying and acting as executors would be charged in equity with the fulfilment of the trust as ordinary trustees. Moreover, as well said by the supreme court of Illinois in *Glover v. Condell*, 163 Ill. 566, 596: "An executor may serve in two capacities, and have two different sets of duties to perform. When he acts simply as executor, he performs the functions of administration, such as receiving and paying what is due to and from the estate. But, in addition to these duties, he may be appointed testamentary trustee under the will, and have another class of duties to perform as the donee of a power in trust." 7 Am. & Eng. Ency. of Law, 179. The time having long passed when it was Woodruff's duty to execute the trust, his holding thereafter, even if, at first, it was as executor strictly, was that of a trustee of an express trust, and equity has jurisdiction to enforce it.

Under the facts of this case, however, it is immaterial whether Woodruff is acting in relation to the trust property as an ordinary trustee or as an executor in carrying out the trust, for in either case he was acting in a fiduciary capacity and was the trustee of an express trust created by the terms of the will which he accepted and undertook to perform, and his duties with respect to the trust property are the same, whatever be the technical name of the capacity in which he

acted ; and when, during the existence of the trust, he bought the trust fund on his own account, the *cestuis que trustent* may rightly treat him as still holding for their benefit. But as a matter of construction we think the duties imposed by the acceptance of the testamentary trust are independent of the duties of the executor in administering the assets, and are essentially different in character.

There being, therefore, a trust which Woodruff accepted and agreed to perform, quite distinct from that in administering the estate, it is alleged in the complaint that while he was acting as such trustee he indirectly bought for his own benefit the trust property, and applied the same to his own use, and still so wrongfully holds it. Accepting as true these statements, and the further allegation that this was done without the consent of the beneficiaries, as upon this demurrer we must, it follows that a cause of action in favor of the *cestuis que trustent* is stated.

For our present purpose it may be conceded that the complaint insufficiently charges the invalidity of the order of sale, and that it is of no consequence whether or not the probate proceedings in the court are still pending. True it is that the complaint alleges that the administration of the estate is still pending in the county court; but we are inclined to the view that this must be taken along with the other allegation that an invalid order was therein entered settling the estate and discharging the executor ; and since, in our view, there is not a sufficient showing to justify a setting aside of this order (and if there was, no such relief is necessary), we must conclude that the county court has finally disposed of the estate, so far as it had power to do. These conclusions dispose of the first, second and sixth grounds of the demurrer against the defendants.

From what has already been stated, it is manifest that this is not an action to set aside the decree of the county court ordering a sale of the property on the ground that it was fraudulently obtained ; neither is it an action to vacate the final order discharging the administrator and approving his

accounts, and a reopening of the same on the ground that it was improperly procured. On the contrary, it is an action to enforce a trust and compel an accounting, and the appropriate relief can be granted without setting aside the order of sale, or reopening the administration of the estate, or canceling the deed of the executor, or the other deeds mentioned, and even on the assumption that no bad faith characterized the trustee's acts. Full relief may be granted upon the supposition which, in safety, we may indulge, that all of the proceedings in the probate court were regular and valid; that the indirect purchase and subsequent holding by the trustee were not void, but only voidable at the election of the beneficiaries; for the gist of the present action is the purchase and adverse holding by a trustee of the trust property for his own benefit, without the knowledge or approval of the *cestuis que trustent*, which is voidable at the option of the latter. 2 Pomeroy's Eq. Juris. § 914, and notes; *Fox v. Macreth,* 1 Smith's Lead. Cas. (White & Tudor's notes) 188; *Richardson v. Brooks,* 52 Miss. 118; *Fulton v. Whitney,* 5 Hun, 16.

This conduct was not inquired into, or passed upon by, nor was it in issue in, the county court. It was not involved in the administration of the estate " according to the provisions of this chapter," nor was it embraced in any account approved by the county court. The duties as trustee were separate and distinct from those as executor. See Mills' Ann. Stats. sec. 4804, and *Hartzel v. The People,* 21 Colo. 296.

An action such as this is cognizable only by a court of equity. A final accounting by an executor of his acts executorial, and his discharge by the court in which the probate proceedings were had, while conclusive of all matters embraced therein until set aside in a direct proceeding, do not constitute a bar to a suit in equity against him to enforce an express testamentary trust, where the conduct complained of is said to be such a violation of the trust as is here charged, and was not inquired into by the probate court; and full relief may be granted without setting aside or interfering with its orders, especially when knowledge of the wrongful acts was acquired

after final settlement. In this case, Woodruff, in violation of the testamentary trust, sought indirectly to acquire the trust fund for his own benefit, but at the option of the beneficiaries became their trustee *ex maleficio* from that time forth. This inconsistent conduct was not inquired into or sanctioned in the mere approval of his. acts as executor. A court of equity, sitting as such, has not the power collaterally to correct probate proceedings, but it may, nevertheless, investigate the acts of one performing the duties of an executor who has acquired the legal title to property through proceedings in a probate court in violation of a testamentary trust, and declare him to hold the same in trust for the benefit of the *cestui que trust*, even though the inquiry may lead into the probate court, but not to the extent of setting aside its judgments.

The reason that a trustee is not allowed to become a buyer of the trust property is not that bad faith necessarily characterizes the purchase. It may be full value was paid. But to permit such dealing opens the door to fraud, and the law deems it the only safe way to put the trustee beyond temptation to serve his own interests by declaring all such sales voidable at the option of the beneficiary. The beneficiary, therefore, at his election, may have such a sale set aside, or hold the trustee so purchasing still a trustee for his benefit, and may require an accounting of all advantages that have accrued to the trustee from the sale, without any further showing than the mere fact of the purchase during the continuance of the trust. 7 Am. & Eng. Ency. of Law, 179, 294; 27 Am. & Eng. Ency. of Law, 3, *et seq.*, 250, *et seq.*, 271, *et seq.*, and cases cited; *Potter v. Smith*, 36 Ind. 231 (a case almost exactly in point with the one at bar); *Wilson v. Brookshire*, 126 Ind. 496; 2 Pomeroy's Eq. Juris. § 958, *et seq.;* 1 Story's Eq. Juris. § 322; 1 Perry on Trusts, § 194, *et seq.;* Rorer on Judic. Sales (2d ed.), §§ 143, 145.

The cause of action not being based upon fraud, Mills' Ann. Stats. section 2911, which provides that bills for relief on the ground of fraud shall be filed within three years after the discovery by the aggrieved party of the facts constituting

such frauds and not afterwards, is wholly inapplicable. *Missouri Savings & Loan Co. v. Rice*, 84 Fed. Rep. 131. Where, as in the case at bar, the trust is an express trust, or it is a resulting and continuing trust created with the consent of the trustee and *cestui que trust*, the statute of limitations does not apply. In this class of trusts no right of action accrues unless the trust is repudiated in some way, and knowledge thereof brought home to the *cestui que trust*. *Warren v. Adams*, 19 Colo. 524; 13 Am. & Eng. Ency. of Law, 685, *et seq.*; 2 Perry on Trusts, 863, *et seq.*

If any section of our limitations statute is applicable, it is section 2912 which provides that " bills of relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within five years after the cause thereof shall accrue, and not after." Assuming that this section does apply, let us see if the cause of action is barred.

The complaint avers that the defendant Woodruff never disavowed the trust, and, if he did, no knowledge of its repudiation was brought to plaintiffs' attention, and they knew nothing of its denial, until about September 1, 1891. By the terms of the will the trust was limited to ten years from the testator's death. He died December 5, 1879. The trust, therefore, was a continuing one, at least, till December 4, 1889. If Woodruff was administering it as a trustee, he was under no obligation to distribute the fund until that time. On the other hand, if he had control of the property as executor, he was under no obligation to make distribution until his final report. In the latter view the trust continued until his final discharge as executor on the 30th of August, 1891, so that the beneficiaries could not call the trustee to a final account earlier than December 4, 1889, or upon the other two suppositions, August 30, 1891, or September 1, 1891. This action for that purpose was instituted December 3, 1894; so that whether the cause of action be held to have accrued at the expiration of ten years from the testator's death, or when the estate was settled, or when knowledge of the repu-

diation of the trust was brought to the attention of the beneficiaries, this action was begun within the period of five years after each of said dates; and so the action is not barred by the section quoted.

This leaves but two other questions: one as to the plaintiffs' laches; the other, their failure with sufficient particularity to state why they did not sooner acquire information of the disavowal, and how and when they learned of the same. The latter objection was made a special ground of demurrer; the former is raised here for the first time. If the question of laches be resolved against the defendant, the other question needs no further consideration. It is as convenient, however, to consider both together.

The general rule is that laches is not a ground of demurrer, and while it is entirely within the power of the court, either at the trial or upon the review, to dismiss an action upon this ground, whether or not the point be raised by the defendant, yet when the latter does raise it, the usual and proper method is by answer. *Hagerman v. Bates*, 24 Colo. 71; *Harris v. Cornell*, 80 Ill. 54; 2 Perry on Trusts, § 868.

Though a cause of action be not barred by some statute, a court of equity may refuse to entertain a stale claim, or give relief, where the plaintiff once had a meritorious demand, if he has unreasonably slept upon his rights. *G. W. M. Co. v. W. of A. M. Co.*, 14 Colo. 90. Whether laches will be imputed depends largely upon the facts and circumstances of each case. Where the rights of innocent purchasers are involved, or the subject-matter of the controversy is materially changed, and in various other circumstances not necessary to specify, a strict rule may be enforced; but where, as in the case at bar, the defendant still retains in his own name title to a large part of the trust property he is charged with having bought, and the delay, in part, at least, is due to concealment of the wrongful acts by the defendant, and full relief, so far as the plaintiffs are entitled to anything, may be administered without injury to innocent third parties, a more liberal rule should be applied. Under the facts of this case, as alleged in the

complaint, we think the plaintiffs are entitled to maintain their action. *Speidell v. Henrici et al.*, 15 Fed. Rep. 753.

The alleged indefiniteness in stating how and when plaintiffs learned of the infidelity of their trustee is not important, in view of the fact that we have just decided against defendant's contention respecting plaintiffs' laches. We may, however, observe that the facts as alleged in this complaint might well disarm the suspicion of the plaintiffs, and throw them off their guard. On the supposition that their trustee would deal fairly with them, and the deed records on their face exhibiting no evidences of the indirection practised by him, they were justified in assuming that his possession and use of the trust property were for their benefit. Since no claim of ownership in his own right was made until shortly before the bringing of this action, and, so far as the allegations of the complaint go, since the possession and use made by defendant Woodruff of this property were the same after as before title thereto was taken in his own name, and as no other facts appear in the complaint which would call for or demand an inquiry or investigation by them as to the true relation which defendant Woodruff bore to this property, we are not prepared to say, upon demurrer to the complaint, that plaintiffs had been guilty of laches in instituting or prosecuting this action, or that they have failed with sufficient definiteness to bring themselves within the rule contended for by the defendant.

We have not gone deeply into the learning of the books upon the law governing trustees, by which the rights of these parties must ultimately be determined, but only so far as was necessary to a decision of the errors assigned. In doing so, we are obliged to assume the existence of the facts well pleaded in the complaint. What facts may be established at the trial, if one should be had, of course we do not know, and our decision here, as a matter of course, is in no wise conclusive thereof; but we are entirely satisfied that enough facts are set forth in the complaint to constitute a good cause of action against defendant Woodruff for a violation

of his trusteeship, and that he should be held to answer. The fundamental error of the trial court apparently was in holding that fraudulent acts such as are within the purview of section 2911, Mills' Ann. Stats. constituted the cause of action, and the errors committed below may be directly traced to this misconception.

In view of the foregoing it follows that the judgment of the district court should be reversed, and the cause remanded for further proceedings in conformity to this opinion, and it is so ordered.

*Reversed.*