[No. 2285.]

CURRIER ET AL. V. JOHNSON ET AL.

**Trusts and Trustees—Executors—Wills—Jurisdiction.**

Where a testator left his residuary estate to his executors to be by them held and managed, the income therefrom to be · paid to his widow and two sons during their natural lives, and at their death to convey said estate to his grandchildren, the county court sitting for probate purposes would not have jurisdiction of an action by the grandchildren against the executors, the widow and sons, for an accounting for losses sustained to the estate by the willful depletion thereof by said executors illegally paying out the principal of the estate as the income thereof, but such action was properly brought in the district court.

*Error to the District Court of Weld County.*

Mr. C. D. TODD, Mr. H. E. CHURCHILL, Mr. DELPH E. CARPENTER, Messrs. DINES & WHITTED, for plaintiffs in error.

Messrs. ESTEB & WOLFF, for defendant in error, Horace G. Clark.

Mr. H. N. HAYNES, for defendant in error, Bruce F. Johnson.

Mr. JAMES W. McCREERY, for defendants in error, James F. Tuckerman and William Mayher.

GUNTER, J.

Upon the facts stated in the complaint the court ruled that it had no jurisdiction of the subject of the

action. Such facts, so far as material to this ruling, are: July 25, 1892, Warren Currier died, leaving surviving, his widow, Lydia M., his sons, George W., and Henry F., their wives, Ella B., and Lucy P., and grand children, Virginia W., Lydia G., Edward W., Mary B., Farnsworth, and Elizabeth L., (children of George W.), and Louise W., Hazel P., Warren, and Julia K., (children of Henry F.); all of whom were living at the time of the institution of this action. At which time all of the grandchildren were minors except three.

The deceased left a will, and an estate of large value. This will provides:

1. For the payment of debts.

2. Devises certain personal property to the wife of deceased.

3. Gives to George W. Currier the use of the Greeley homestead on certain conditions.

4. Gives to Henry F. Currier the use, rent free, of certain real estate.

5. Provides for the adjustment of certain advancements made by deceased to the above sons.

6. "I give, devise and bequeath all the rest and residue of my estate, real, personal or mixed, and wherever situate, to my said executors, to wit: Bruce F. Johnson and Charles H. Wheeler, both of said Greeley, and to the survivor of them and their successors, to hold, manage and dispose of in trust for the uses and purposes following, to wit:

"(a) Two thousand dollars of the net annual income therefrom to be collected by my said executors and paid over annually as an annuity to my said wife in quarter-yearly installments of five hundred dollars each, during her natural life, the same to be accepted by her in lieu of dower and in full of all claims upon my estate not hereinbefore specified

and provided for, all such payments to be made upon her personal receipt, and not otherwise.

"(b) All the rest and residue of the total net annual profit and income that shall be derived from my said estate shall be collected by my said executors and by them annually paid over in equal parts to my two sons (they being my only surviving children), to wit: Said George W. Currier, and Henry F. Currier, during their natural lives, one-half thereof to each, and upon the separate personal receipt of each. In case of the death of either, the share of the other (he still surviving) shall continue and be paid over to him during his natural life. But the share of the one deceased shall, from the time of his death be distributed and paid over to his widow, if then surviving, and to his then surviving children, in equal parts to each, share and share alike; and such payments shall continue during the natural life of my son then surviving. The annual payments aforesaid shall be made in quarter-yearly installments and upon the separate personal receipt of the party entitled to receive the same, and not otherwise.

"(c) If either of my said sons shall die without leaving issue surviving him, the share of the annual income from said estate of such deceased son shall go to and vest in and be paid over to his surviving brother in quarter-yearly installments as aforesaid. If either of my said sons shall die leaving issue surviving him, such issue shall take the part and share of his or her father, and where there are several surviving children they shall share and share alike in said net annual income.

"(d) It is my will that my said executors shall carefully collect and take care of said estate, and that they shall, by proper sale or sales thereof, convert such parts of it into cash as they shall judge

to be for the best interest of my said wife and sons, and the other beneficiaries herein named or described; and to that end I give to said executors. and to the survivor of them and to their successors, full power and authority to sell and convey said estate or any part thereof in fee simple, and to make all proper deeds and other conveyances thereof, reinvesting the proceeds of such sale or sales in such productive securities or improved productive real estate as they may judge to be safe and remunerative having primary reference to the safety thereof. I enjoin upon said executors to distribute fully and carefully the total net annual income and increment of my estate to the persons and in the time and manner here provided, and so as to avoid the accumulation in their hands of property and assets in excess of the total value of the property and assets that shall originally come to them under this will.''

8. ''Upon the death of both of my said sons, said George and Henry, said executors and the survivor of them and their successors are hereby empowered and directed to convey by proper deeds or other conveyances and in fee simple any and all estate, real, or personal, or mixed, which shall then remain in their hands or subject to their control under the provisions hereof to the heirs at law of my said George and Henry respectively, the children of each taking one-half of said estate *per stirpes* in absolute ownership and in exclusion of all other persons; and I hereby give and bequeath to said children all the said estate so then remaining in the hands of my said executors, each family of children an inheritable estate therein in fee as the heirs at law of my said sons respectively, and taking the same *per stirpes* and not *per capita,* each family of children taking one-half thereof.''

10. "It is my desire that said board of executors shall be continued until the purposes of this will are fully accomplished and the trusts herein created are fully executed; and it is my will that any vacancy arising in said board shall, on the application of any beneficiary herein named, be filled by the appointment of the county court of said Weld county; meaning the court in said county which shall have at the time jurisdiction of probate matters in said Weld county, * * *."

The will was probated September 6, 1892, and the executors named, Bruce F. Johnson and Charles H. Wheeler, qualified as such September 14, same year. They acted as executors from that date until May 23, 1893, when Charles H. Wheeler tendered his resignation as executor, which was accepted by the county court, and an order made purporting to appoint Horace G. Clark as his successor. Johnson and Clark continued to act as executors of the estate until January, 1897, when they tendered their resignations as such, and the court made an order (Jan. 30, 1897), appointing James Tuckerman and William Mayher as their successors; which last named appointees have continued to act as such since the date of their appointment until the institution of this suit in November, 1899.

This action was by the grandchildren of Warren Currier,—residuary legatees of the principal estate which was required to be kept intact for them—against said Johnson, Wheeler, Clark, Tuckerman, Mayher, said sons, George W., and Henry F., their wives, and the said widow of Warren Currier, and was to have an accounting for losses sustained through the principal estate being depleted by the fraudulent and illegal acts of its trustees; to have the will construed, and the question settled as to

where the legal title of the estate now rests, and for other and general relief.

Johnson and Wheeler depleted the principal estate (as it is alleged) during their administration, in the sum of $2,796.72—such depletion being due almost wholly to their knowingly and illegally paying out the principal of the estate as the income. thereof. This was in violation of their duties as trustees, and to the prejudice, in said amount, of these plaintiffs in error, the residuary legatees of the principal estate.

Wheeler's resignation was accepted and Clark appointed without the knowledge or consent of any one of the beneficiaries of said estate.

During the administration of Johnson and Clark the principal estate was depleted by them knowingly and illegally (as it is alleged) to the extent of $14,620.32. The facts constituting such depletion are set out in detail. For example, they purchased of George W. Currier a certain interest in real estate paying him $1,500.00 therefor; which interest had no value, and said executors knew that it had none, but purchased the same fraudulently and illegally for the purpose of enabling executor Johnson to collect $500.00 due to him individually of George W. Currier. That they purchased certain improved lands of George W. Currier at a price which they knew to be in excess of their value in the amount of $1,800.00; that they bought realty in the state of Florida to the extent of $10,000.00 at a price largely in excess of what they knew to be its value. All of which purchases were made out of the principal of the estate and to the prejudice of these plaintiffs.

During the administration of Johnson and Clark, lands were conveyed by them in behalf of the estate, and lands were conveyed to them for the benefit of the principal estate.

Plaintiffs in error contend, that the county court had no power to appoint Clark trustee of the estate, and if so, he was without capacity to convey lands of the estate or to take title to lands intended to be conveyed to it. They ask for a construction of the will as to the powers, duties and acts of defendant in error Clark.

During the administration of Mayher and Tuckerman the estate was depleted by them (as it is alleged) in the sum of $10,178.53.

During the administration of Johnson and Clark, for their personal gain, they released a certain trust deed and mortgage held by the estate, and thereby prejudiced the principal estate in the sum of $6,000.00. That steps in aid of the consummation of this illegal depletion were knowingly and illegally taken by Mayher and Tuckerman during their administration. During which administration Mayher and Tuckerman bought large quantities of coal, lumber and other supplies from Tuckerman for the estate at unreasonable prices to the prejudice of the principal estate. That in other ways they, as trustees, dealt with themselves as individuals greatly to the prejudice of the estate. They have sold lands in the name of the estate, and taken deeds of lands in their names as executors for the benefit of the estate. Further, plaintiffs in error allege that they were appointed without the knowledge or consent of any one of the beneficiaries; that the court had no power to make such appointment, and ask that the will be construed, and such jurisdictional question be determined.

If these allegations be true, the trustees of the estate have violated their duties as such, and these plaintiffs in error, the beneficiaries of the trust estate, have been materially prejudiced thereby.

Plaintiffs in error brought this action in the

district court, and contend that it, as a court of equity, had jurisdiction of their cause of action.

Defendants in error contend that the remedy of plaintiffs in error, if they have one, is on the probate side of the county court.

The will of Warren Currier imposed upon Bruce F. Johnson and Charles H. Wheeler two classes of duties,—duties executorial, and duties as trustees.

"The offices of executor and trustee are distinct, and the mere fact that they are united in the same person does not destroy the distinction."—7 Am. and Eng. Ency. of Law (note and authorities cited), p. 179.

"An executor may serve in two capacities and have two different sets of duties to perform. When he acts simply as executor, he performs the functions of administrator, such as receiving and paying what is due to and from the estate, but in addition to these duties he may be appointed testamentary trustee under the will, and have another class of duties to perform as the donee of a power in trust." —7 Am. and Eng. Ency. of Law, p. 179; *French v. Woodruff*, 25 Colo. 346.

In the latter case the will, after providing for certain payments from the estate, directed that the residue thereof should be divided into four equal parts, such parts to be invested by the executors for the period of ten years from the testator's death, and at the expiration of that period the amounts arising from such investments should be paid over to certain beneficiaries. The beneficiaries sued Woodruff in the district court for an alleged violation of his duties as trustee. The court sustained the action, saying *inter alia:*

"By the provisions of the will a trust was created, and the persons nominated as executors were directed to execute it. The trust fund was the residue

of the property, real and personal, left after the debts and specified legacies were satisfied. * * * Under the facts of this case, however, it is immaterial whether Woodruff is acting in relation to the trust property as an ordinary trustee or as an executor in carrying out the trust, for in either case he was acting in a fiduciary capacity and was the trustee of an express trust created by the terms of the will which he accepted and undertook to perform, and his duties with respect to the trust property are the same, whatever be the technical name of the capacity in which he acted; * * * But as a matter of construction we think the duties imposed by the acceptance of the testamentary trust are independent of the duties of the executor in administering the assets, and are essentially different in character."

In the management of the estate under consideration, after the performance of their duties executorial, which were slight, there being no claims against the estate, the duties of Johnson and Wheeler in the management of the estate, the conservation of the principal thereof, and the paying out of the income therefrom were simply duties as trustees. This action is to recover against them and those acting as their successors for a violation of these duties. In granting this relief, as well as other relief sought, it involves third parties, some of whom are not now, and others have never been, parties to the proceeding in the county court. Further, as stated, the action involves a construction of the will, and the determination of the question, where the legal title of this estate now rests.

Further, if the remedy here sought can be obtained, this action will avoid a multiplicity of suits. It seems to us that the question whether or not the district court had jurisdiction of this action has been settled by the rulings of the supreme court and this

court. Further, that it has in like manner been determined that the county court sitting for probate business is without jurisdiction of this action.

"The district court shall have original jurisdiction of all causes both at law and in equity."—Colorado Const., art. VI, sec. 11; Mills' Ann. Stats., Vol. 1, p. 265.

In *French v. Woodruff, supra,* instituted in the district court, the court assumed jurisdiction because the cause of action involved was alleged violations of his duties as trustee by Woodruff. In the course of the opinion it was said:

"There being, therefore, a trust which Woodruff accepted and agreed to perform, quite distinct from that in administering the estate, it is alleged in the complaint that while he was acting as such trustee he indirectly bought for his own benefit the trust property, and applied the same to his own use, and still so wrongfully holds it. Accepting as true these statements, and the further allegations that this was done without the consent of the beneficiaries, as upon this demurrer we must, it follows that a cause of action in favor of the *cestuis que trustent* is stated. * * * An action such as this is cognizable only by a court of equity."

In *Chilcott v. Hart,* 23 Colo. 40, the district court entertained jurisdiction of the action which was to obtain a construction of the will of Senator Chilcott; the action was instituted by his children (sole heirs at law), against the executor Hart, and the residuary legatees under the will.—See also *Clayton v. Hallett,* 30 Colo. 231, 70 Pac. 429.

The case under consideration presents questions of alleged violations of the trust by the trustee, and asks a construction of the will under which the estate is being managed. The county court sitting for probate business was without jurisdiction of this

action; its jurisdiction is dependent entirely upon the constitution and the statute.—*Wright v. Wright,* 11 Colo. App. 470.

In the case last mentioned the administratrix of the estate of H. E. Wright, deceased, presented to the county court sitting for probate business a petition reciting that certain parties were partners of the deceased at the time of his death, and prayed that a citation be issued requiring the said parties to make and file an inventory of the partnership business in that court. The citation as prayed was issued. One of the parties cited appeared and answered denying the existence of the alleged partnership. The parties cited moved a dismissal of the proceeding on the ground that the issue presented was one of the existence of a partnership, and that the county court sitting for probate business was without jurisdiction to hear and determine it. The motion was overruled. The cause was heard, petitioner introduced witnesses, and thereby attempted to show the existence of a partnership. The parties cited protested against the jurisdiction of the court and refused to offer any evidence. Thereupon the court found the existence of a partnership. The parties cited, who raised the question of jurisdiction, appealed. The action was reversed, this court holding that the action was equitable, and that the county court sitting for probate business had no jurisdiction of such equitable action. In the course of the opinion it is said:

"The county court sitting as a court of probate has no other powers than those given to it by the statute, and such incidental powers as pertain to it for the purpose of enabling it to exercise the jurisdiction which is conferred upon it. * * * By virtue of the statute under consideration, the court has the power to compel a surviving partner to file

an inventory, and otherwise comply with its requirements, but it is not an incident to that power to determine the disputed question as to whether a partnership actually existed. The determination of this question involves the consideration of many intricate and vexatious questions of law and fact, and it is not to be supposed that it was intended to invest the probate court with power in this summary manner to dispose of them. It involved the determination of the rights of property, for which the parties were entitled to a trial in a court of competent jurisdiction, and in a proper manner. The case at bar was in reality a dispute between the administratrix representing the heirs of the estate and strangers, as to the title of property. The mere allegation in the petition that a partnership existed did not deprive the appellant of the right to have the matter adjudicated in a proper manner. As to this matter, the appellant was a stranger, and it is well settled that a probate court is without jurisdiction to try title to property, as between the representatives of an estate and strangers."

In conclusion the court suggested that the only remedy for determining the existence of such question of partnership was in a court of equity, saying:

"This should be done by a suit in equity, to which all persons in interest should be made parties, and brought into court."

In *Marshall v. Marshall*, 11 Colo. App. 505, a suit in equity was instituted in the district court by Marshall against the administratrix of the estate of deceased. Plaintiff left certain shares of stock with deceased, and without plaintiff's knowledge or authority deceased caused them to be exchanged for new certificates of stock running to himself. The prayer was that the decedent be declared to have held during his life time the shares of stock mentioned

as trustee for plaintiff, and that he was without
authority to sell or in any manner dispose of the
same, and that recourse be had to certain stock
standing in the name of decedent to make up the
amount of plaintiff's stock. The gist of the action
was to compel the administratrix to deliver to plain-
tiff certain stock in lieu of that converted by the
decedent. The relief was granted. The main con-
tention relied upon for reversal was that the district
court was without jurisdiction, as it appeared upon
the face of the complaint that the subject-matter of
the controversy was pertinent to the settlement of
the estate of the decedent, and therefore the county
court in which the administration was pending had
exclusive jurisdiction. In the course of the opinion
the court said:

"It is well settled that county courts sitting for
the transaction of probate business, are courts of
limited jurisdiction. * * * It is true that it is
declared by the constitution to be a court of original
jurisdiction so far as probate business is concerned,
yet in the exercise of its powers, its jurisdiction is
limited and special. * * * The subject-matter
of this contest was specially and peculiarly cognizable
in a court of equity, and in such court only. Conced-
ing that under our laws county courts sitting for pro-
bate business are not entirely divested of equity jur-
isdiction, yet if they have any, it is that only which
is incidental to their general powers for adjudicating
claims against estates, and even then it does not
extend to cases like this, where third parties must be
brought into court, and conflicting interests composed
and settled. * * * This was an action whereby,
upon its face, plaintiff sought to enforce a trust
against certain property. He cannot, therefore, be
called a creditor within the meaning of the probate
law, but must seek relief in a court of equity. * * *

As conclusive of this question, however, we are clearly of opinion that the matter in controversy was not one pertaining to the settlement of an estate within the meaning either of the constitution or of the statute providing a mode of procedure in county courts sitting for probate business."

The action before us stated a cause of action in favor of these plaintiffs in error, who were never before the county court, against certain of defendants in error for a breach of their duties as trustees under the will of Warren Currier. This presented a cause of action cognizable only by a court of equity. The county court sitting for probate business did not have jurisdiction of it; the district court did. The action involved the construction of the will with reference to various parties who were not before the court sitting for probate business. The county court sitting for such purpose did not have jurisdiction of such cause of action; the district court had such jurisdiction.

We have not gone into the merits of the answers of Henry F., George W., or Lucy P. Currier, because the trial court did not. It sustained the demurrers thereto because of its ruling on the question of jurisdiction as to the case stated in the complaint. We have considered only this question of jurisdiction, and express no opinion as to the merits of above answers. The order sustaining the demurrers thereto will be set aside with leave to the parties to attack the same, and to all parties to amend as they may be advised.

The judgment of the district court will be reversed.

*Reversed.*